THE CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY, Appellant, *v.* RODERICK B. FRARY *et al.*, Appellees.

### APPEAL FROM BUREAU.

The courts will not interfere by injunction, to prevent the collection of taxes, because there have been irregularities in the assessment.

Chicago, Burlington and Quincy Railroad Co. *v.* Frary et al.

THIS was a proceeding in chancery, by bill, asking an injunction against the treasurer to restrain him from levying, selling or distraining the property of the railroad company, for the taxes levied in Bureau county.

The record in this case shows that the said railroad company duly filed a list and valuation of all their taxable property in Bureau county as required by law.

That at the annual meeting of the board of supervisors of said county, in September, the valuation of the items of " Fixed and stationary personal property," of " The other personal property," and of " The pro rata moveable property," in said list and in the list of each railroad in the county, were increased forty per cent. each.

That at a session of said board, held in December of said year, the action of said board at the September term was reconsidered, and such action had that the items aforesaid of said list were each increased forty per cent., and the said items in the lists filed by other railroad companies in said county, were increased in different proportions.

That no notice of any of these changes was ever given to said company.

That subsequently, at a session of said board held in June, 1858, said company petitioned the board to abate said increased valuation.

That said board did at said June session, abate an inconsiderable portion of the same.

By the law of 1855, railroad companies are required to file a list of their taxable property in each county with the county clerk, who shall lay the same before the board of supervisors when they meet to equalize the assessment of property, which, by the acts of 1851 and 1853, must be at an annual meeting.

If the supervisors do not think it a full and fair statement of the company's taxable property and the value thereof, they may assess it in accordance with the rules prescribed for the assessment of such property.

The rules for the assessment of such property are laid down in section two of the Act of 1855, and prescribe a specific description of each lot or parcel of land and its value, the number of acres taken for right of way, stations, etc., the length of the main track and all the side tracks in the county and their value, a list of the rolling stock of said company, and its value, and the value of all other personal property of said company in said county.

The injunction which was granted on this application was dissolved, and the bill dismissed with costs; from this decision an appeal was taken.

B. C. Cook, for Appellant.

W. H. L. Wallace, for Appellees.

Caton, C. J. The main question involved in this case has been examined and considered by this court with all the care and diligence of which we are capable, and with a due sense of its importance, and the influence which our decision must have upon the rights and interests of the individual citizen and the public. We have in this case been called on to inquire in what cases the powers of a court of chancery may be exercised to restrain the collection of the revenue of the State. The decisions of this court show, that in a large majority of the cases, involving the regularity of the proceedings for the collection of the revenue, we have met with irregularities in the proceedings to such an extent as to destroy the titles to real estate acquired at tax sales. In this way, has a court of common law, afforded a remedy for irregularities in the execution of the revenue laws. The same and even additional redress is afforded to parties whose personal property is seized for a tax illegally assessed. If in all these cases the court of chancery had taken the matter in hand, and examined the regularity of the proceedings, whenever an attempt was made to collect the revenue, and restrained its collection, if it were shown that the law had not been complied with in the assessment of the taxes, the result would have been that in many if not most cases the collection of the revenue would have been enjoined, and taxes would not have been collected. Under such a system of the administration of the laws, with so complicated a revenue system as ours, rendered so by a tender regard for the rights and interests of the citizen, no government could exist for a single year. Let us now, by sustaining this bill stretch out the strong arm of this court and stay the hand of the collector in every case where any irregularity can be shown in the assessment of the revenue, and a flood of injunctions would be spread over the land at once, State and county revenue would cease to be collected, at least till the termination of protracted litigation, and the wheels of government would stop. It is no answer to say, let those whose duty it is to administer the revenue law do it with greater care, and do everything which the law requires, just as it requires, and at the time specified, and be careful that they do no more than is required. We must take things as they are and look at practical results.

Neither precedents nor reason, will warrant the use of the writ of injunction for such purposes, and to produce such results. Where the law affords an adequate remedy this writ cannot be

used, and especially where greater mischief will flow than good will result from it, the court will always withhold this species of relief. Equity cannot attempt to prevent, any more than it will redress, all wrongs. It is not in ordinary but in extraordinary cases that this writ is properly invoked. If the law can redress the wrong—if it can repair the injury, equity must suffer it, and let the courts of law redress it. This is the general rule to which there are no doubt exceptions, and exceptions too in cases of the collection of taxes. Those exceptions are confined almost, if not entirely, to cases where the tax itself is not authorized by law, or if the tax itself is authorized, it is assessed upon property which is not subject to the tax. Such was the case of *The Illinois Central Railroad Company* v. *The County of McLean*, 17 Ill. R. 291. There we enjoined a tax levied upon property not subject to that tax. But it is unnecessary to refer to all the cases to be met with in our own and other reports on this subject. Where an injunction has been finally sustained it will generally, if not always, be found to be of this class. That it is possible, that cases may sometimes be found, where this distinction has been disregarded from inadvertence, or from the peculiar circumstances connected with them. We can find no other basis for a reasonable and practical distinction. If we permit the injunction to be issued where the tax is authorized by law and the thing taxed is liable to that tax, there is no stopping point short of enjoining all taxes, whenever any irregularity has intervened. This power the court of chancery has never assumed, nor could it, without the most disastrous consequences to the State. There may be cases, the particular circumstances, or peculiar hardship of which, will justify an exception to this general rule. This is not one.

We have examined the alleged irregularities in the levy of this tax, and are by no means prepared to say that they can be sustained any where. Indeed we think a satisfactory answer to all these objections possible, but we choose to place our decision upon the broad ground of jurisdiction, that all may distinctly know when the court of chancery will and when it will not interfere to enjoin the collection of the public revenue, or at least that they may know what the general rule on this subject is.

We affirm the decree.

*Decree affirmed.*