## Case No. 2,668.

### CHICAGO, B. & Q. R. CO. v. PAGE.

[1 Biss. 461.] [1]

Circuit Court, N. D. Illinois. Aug. 1864.

NEW CERTIFICATES OF STOCK—WHEN NOT DIVIDENDS.

1. Where a railroad company, from time to time, made advances from their surplus earnings to another railroad company, taking leases and morgages therefor, and such second company finally became insolvent, and the loaning company, to secure their debt, foreclosed their mortgages and purchased the insolvent road for the amount of their advances, and issued stock certificates to each of their stockholders, representing their pro rata interest in this property thus acquired,—all the said advances having been made prior to the passage of the act of July 1, 1862 [12 Stat. 469],—such certificates are not dividends within the meaning of section 81 of that act, and are not subject to the three per cent. tax.

2. The advances having all been made prior to the passage of the act, and no money having been received at the sale, but the company having simply perfected their title and enforced a pre-existing lien, and having always treated this acquired property as added capital stock, such certificates are not properly dividends in money or scrip paid to the stockholders.

In equity. This was a bill to prevent the collection, by seizure, distress, or otherwise, by Mr. Schneider, the United States collector for this district, of a tax for $29,285, claimed to be due to the United States from the complainant, under the 81st section of the internal revenue law of July 1, 1862 (12 Stat. 469). A controversy having arisen between the government and the railway company as to the right of the former to assess and levy the tax, and the collector being ordered to enforce its collection, this bill was filed. By various acts of the legislature of Illinois, the complainant, prior to 1860, had the right to construct a railway from Junction, in the county of DuPage, to Galesburg, in the county of Knox. The road was in operation between those points in 1855. For the purpose of aiding the Peoria and Oquawka Railway

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Company, and to obtain for itself a connection with the Mississippi river at Burlington, the complainant, in 1854, advanced to the Peoria and Oquawka Railroad a sum exceeding three hundred thousand dollars, which was secured by a lease in the nature of a mortgage on that part of the Peoria and Oquawka Railroad west of Galesburg. This sum was not sufficient for the purpose contemplated, and, prior to the first day of January, 1862, the complainant, with the same object, had advanced other large sums of money to that company, amounting, in the aggregate, even as early as the first of January, 1860, to more than fifteen hundred thousand dollars. This whole indebtedness was secured by mortgages, leases, and contracts in the nature of mortgages on that part of the Peoria and Oquawka Railroad extending from Peoria to Burlington. The plaintiff was also obliged to purchase, in order to secure these advances, certain first and second mortgage bonds of the Peoria and Oquawka Railroad, amounting to twelve hundred and fifty thousand dollars, given and secured in 1852 and 1853, on the same part of the road. Prior to the first day of January, 1862, the complainant had become the owner of nearly all of these mortgage bonds. In February, 1860, the Peoria and Oquawka Railroad Company had become insolvent, and the complainant caused suit to be instituted to foreclose these mortgages in this court, and a decree of foreclosure was entered, and at the sale under the decree, which took place in October, 1862, the complainant became the purchaser of that part of the road between Peoria and Burlington, as the only means of saving any portion of the moneys previously advanced. From July, 1857, to November, 1862, but one dividend was distributed to the stockholders by the complainant. The earnings of the complainant's road were appropriated to aid in making the advances and purchases already referred to, and which have never been reimbursed, except by the sale of the part of the Peoria and Oquawka Railroad above mentioned, and of which the complainant is now the owner. In November, 1862, the complainant had on hand of the earnings of its road, $210.207.29, which had not been appropriated in the manner stated above, and which sum it divided among its stockholders, reserving three per cent. therefrom, which was paid to Mr. Schneider, the collector for the United States, as required by the 81st section of the internal revenue law. The complainant, with a view of ascertaining the amount of the earnings of the road, which had thus been advanced to the Peoria and Oquawka Railroad Company, on the 16th of November, 1862, caused an account to be taken, and the sum was found to be in the aggregate $946,900, and thereupon a stock certificate was issued to each of the stockholders of the complainant's road, showing the pro rata amount of earnings which had been advanced, the same

amounting to about twenty per cent. to each stockholder on the original amount of stock held by each. The certificate which was issued under this arrangement was to the effect that the holder was entitled to so many shares of the full paid stock of the company—thus turning the property which had been acquired for the advances made, into capital stock of the company. It was three per cent. of the sum thus advanced and for which certificates were given in November, 1862, that the government claimed should be paid by the railway company.

Walker & Dexter, for complainant.

Perkins Bass, U. S. Dist. Atty., for defendant.

DRUMMOND, District Judge. The 81st section of the act of July 1, 1862, provides that on and after that day "all dividends in scrip, or money, or sums of money thereafter declared due or payable to stockholders of any railroad company, as part of the earnings, profits or gains of said companies, shall be subject to and pay a duty of three per centum on the amount of all such * * * dividends whenever the same shall be paid; and said railroad companies or railroad corporations, or any person, or persons owning, possessing or having the care or management of any railroad company, or railroad corporation, are hereby authorized and required to deduct and withhold from all payments made to any person, persons or party, after the first day of July, as aforesaid, on account of any * * * dividends due and payable as aforesaid, the said duty or sum of three per centum." 12 Stat. 469, 470. In conformity with the joint resolution of July 17, 1862 [12 Stat. 627], the secretary of the treasury gave notice that the time mentioned in the foregoing section should be construed as referring to the first day of September, 1862.

It is insisted on the part of the government that the issuing of the certificates of stock in November, 1862, was a division among its stockholders of the profits and earnings of the road, or a dividend in scrip within the meaning of the law. There can be no doubt the assets, securities and mortgages held and owned by the plaintiff at the time of the passage of the law, and which were then in course of foreclosure and sale in this court, were partly acquired with the earnings and profits of the road; but they were laid out and invested in them—a large share prior to 1860, and all prior to July 1, 1862. These profits and earnings had then actually been disbursed for them and they were held as a part of the general property or assets of the company. When the company enforced its lien by a sale, the property and assets, in part purchased with the earnings of the road, did not produce the money which had been paid for them, but the company took in their place that part of the Peoria and Oquawka Railroad extending

from Peoria to Burlington, and became the legal and equitable owner of the same. Its value as an acquisition to the property of the plaintiff was estimated at its cost, and a stock certificate was issued, showing the amount which each stockholder had contributed towards the purchase.

We think in no just sense can this be considered as a dividend. It was not intended or treated as such by the company. It is true that it is not necessary the division should be of money, but the act clearly contemplates that when it is in scrip, it shall be of a' character to be paid,—and the payment of which can be deducted and withheld from the stockholders by the managers of the railroad,—and that it shall be due and payable. Apply these tests to this property and it will be seen the facts will not warrant the right claimed. Before the sale, it could be regarded only as a loan or purchase made; after, as a bona fide title acquired in the property by the company,—consequently by all the stockholders,—and not as something due and payable to them. If heretofore it had been converted into money, or hereafter it ever shall be, and the amount divided among the stockholders, there might be now, or then, some apparent reason for the position taken. And if the company had had on hand at the time of the passage of the law a portion of its earnings, and afterwards purchased with them property which it converted into stock, there would be some force in urging that the company could not in that way avoid the payment of the tax to the government. But the argument here is, that it is of no consequence what the actual value of the property was in November, 1862, or at the time of the advances,—though not one quarter of the money paid,—yet it must be regarded as a dividend for the whole, and it goes even further, and seeks to establish either that the property must be sold in whole or part to pay the tax, or that earnings on hand and not divided, or subsequently acquired, and for which, therefore, there might be a tax due, shall have an additional burden to the three per centum already imposed. It is plain that such a principle would reach every purchase made with its profits by a railway company in past years, either of real or personal property, added to the general stock, and any apportionment of stock so acquired, for which a certificate might be given after September 1, 1862, showing the amount of such purchase or apportionment, and the share of the stockholder in the same. A construction which leads to such consequences ought not to be given to this statute unless the language imperatively demands it. There is nothing in the scope or spirit of the law, or in its terms, to require such a construction. The true question must always be in these cases: Has there been a bona fide dividend in money or scrip paid to the stockholders, or has there been an attempt to cover up or conceal the payment of a divi-

dend by some device or mere form? If there has been, it may be conceded that the tax should be paid.

If in 1860 a man had bought an estate, or a mortgage on one, with a portion of his income for that year, he thereby added to his estate the value of the purchase. If he in that way increased his income for 1862, that would be taken into account in assessing it, but if he were then to foreclose the mortgage or perfect his title, that would only be consummating a right of property by enforcing an absolute lien. If he made sale of the property, would the proceeds become part of his income for that year, even though reinvested in another estate?

It is contended on the part of the plaintiff that the law only refers to the earnings received after its passage, July 1, 1862. There is much force in the argument, particularly upon comparing the eightieth with the eighty-first section, the former of which declares that, on and after a certain day, railroad managers shall be subject to, and pay a duty of three per centum on the gross amount of all receipts for the transportation of passengers; but it is not necessary for us to decide that question. We think, however, that there must be, in substance or in fact, after the 1st of September, 1862, a distribution of a dividend in money or scrip, made to the stockholders, and not the mere evidence given of a title in property, the right to which already existed. But it may be said that when there are earnings to be divided, the right to them exists before the division. That is true, but it is also true that until actually divided, the managers of the railroad have control of them, and may appropriate them to the improvement or repairs of the road. It is the setting them apart as a dividend in money or scrip that makes the law operate upon them so as to authorize the tax of three per cent.

We think, therefore, under the circumstances of this case, these certificates of stock cannot be regarded as a dividend declared due and payable to the stockholders in November, 1862. The company and the stockholders treated that part of the property acquired with these earnings as capital stock, and it cannot be at the same time stock added to the capital and a dividend.

At the argument, objection was made by the counsel of the government, though not pressed, that the court ought not to interfere in this summary manner to prevent the collection of the revenue, and various authorities were cited upon that point. We have not fully considered that question, and any temporary order that may be made will be regarded as leaving that open for future consideration. This, we understand, is the wish of the counsel, while at the same time desiring the opinion of the court on the merits of the case. The plaintiff insists that a suit at law would be unavailing in consequence of the pecuniary irresponsibility of the collector,

and because his sureties would not be liable, and therefore if this bill is not maintainable the plaintiff is without remedy.

We are informed that the judges of the circuit court of the United States for the eastern district of Michigan, at the June term of the present year, have decided that the sureties of the collector were not liable for illegal collections. If this be so, and the collector himself is not able to respond in damages in an action at law, there would seem to be some ground for the application in this case. However this may be, or whether the distinction taken in some of the cases is sound, that courts of equity will interfere when the tax is illegal or the property not subject to the tax (Chicago, B. & Q. R. Co. v. Frary, 22 Ill. 34), and not in other cases, we need not now inquire. The question in this case has been examined because of the desire expressed by the counsel to that effect, on both sides. If necessary, the right of the court permanently to interfere and arrest the collection of this tax may be hereafter considered. It is proper to add that Judge Davis, to whom it has been submitted, entirely concurs in this opinion.