HERBERT REYNOLDS *et al.*

*v.*

MILK GROVE SPECIAL DRAINAGE DISTRICT *et al.*

*Filed at Ottawa October 31, 1890.*

1. DRAINAGE LAW—*change in the plan or system—of a second assessment—notice of such change.* It is the duty of the commissioners of drainage districts first to adopt a plan or system of drainage which will protect all the lands in their district, and then to classify the lands to be benefited thereby. If, at any time before the completion of the work, the plans are found to be deficient to accomplish the purpose intended, the commissioners are empowered, by implication, to change the same, and may levy an additional assessment to make the necessary changes.

2. No notice is necessary of the change of the plans in a drainage district, or of a levy of a second assessment occasioned thereby, when such change becomes necessary to protect all of the lands assessed.

3. Chancery—*irregularities in assessment—under the Drainage law.* Where the officers of a drainage district are authorized by law to make a particular assessment, and there is no fraud, mere irregularities in the proceedings under which the assessment is made will not give a court of chancery jurisdiction to restrain its collection.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Iroquois county; the Hon. Alfred Sample, Judge, presiding.

Mr. C. H. Payson, for the appellants:

When the statute prescribes a mode and purpose of taxation that mode must be pursued, and no other mode or purpose can be substituted. Dillon on Mun. Corp. (1st ed.) sec. 610; *Howe* v. *People,* 86 Ill. 288; *Gaddis* v. *Richland County,* 92 id. 119; *Webster* v. *People,* 98 id. 349.

The power to levy a tax must be plainly and unmistakably conferred. Cooley's Const. Lim. (1st ed.) 518; Dillon on Mun. Corp. (1st ed.) secs. 605, 606; *Webster* v. *People,* 98 Ill. 343.

When an assessment is made by officers, they must, like inferior courts, show their power in every case. If this be wanting, their proceedings must be held void whenever they come in question. *Sherlock* v. *Village of Winnetka,* 68 Ill. 540; *People* v. *Village of Crotty,* 93 id. 180; *Cook County* v. *McCrea,* id. 236.

It is a fundamental principle, that before a person can be deprived of a right, even by judicial sentence, he must have notice, and reasonable opportunity to be heard in defense of his rights. *Gilmore* v. *Sapp,* 100 Ill. 297; *Updike* v. *Wright,* 81 id. 49.

A special assessment must be in proportion to the benefits to be derived from the proposed work. (*Chicago* v. *Larned,* 34 Ill. 203; *Ottawa* v. *Spencer,* 40 id. 215; *Bedard* v. *Hall,* 44 id. 91.) And it must appear, from the proceedings themselves, that such was the principle upon which the assessment was made. *Crawford* v. *People,* 82 Ill. 559.

The burden must be distributed according to the carefully ascertained proportion in which each part will be beneficially affected. (*Craw* v. *City of Tolono*, 96 Ill. 262.) And when this is not done a special assessment is void. *Bibel* v. *Bloomington*, 67 Ill. 172.

When the law has conferred no power to levy a tax, or when the proper persons shall make a levy for purposes on the face of the levy not authorized, a court of equity will stay its collection. *Ottawa* v. *Walker*, 21 Ill. 605; *Railroad Co.* v. *Frary*, 22 id. 34; *Lippincott* v. *Town of Pana*, 92 id. 24; *Sherlock* v. *Village of Winnetka*, 68 id. 540.

This may occur (illegality of tax) when there is no law on the subject authorizing it. *Keigwin* v. *Drainage Comrs.* 115 Ill. 347.

Messrs. KAY & EUANS, for the appellees:

This court will not inquire into irregularities not affecting the substantial justice of the tax. *Buck* v. *People*, 78 Ill. 560; *Thatcher* v. *People*, 79 id. 597; *Chiniquy* v. *People*, 78 id. 570; *Fisher* v. *People*, 84 id. 490.

The objections to assessments are waived if not made before the commissioners. *Moore* v. *People*, 106 Ill. 376; *Blake* v. *People*, 109 id. 504; *Morrell* v. *Drainage District*, 118 id. 139.

The legislature is the sole judge of the mode in which the power is to be exercised. *Kilgour* v. *Drainage Comrs.* 111 Ill. 342.

The provisions of the constitution in relation to taxes have no application to the imposition of the burdens imposed by the Drainage act. These assessments are not taxes. *Kilgour* v. *Drainage Comrs.* 111 Ill. 344.

Under the Drainage law the land owner has a clear right to contest, on appeal, the reasonableness of assessments against each one of his tracts assessed for benefits. *Turley* v. *People*, 116 Ill. 433.

All land owners in an organized district have, under the law, given their assent,—a part of them by signing the petition, the others by the privilege they have to contest by appeal. *Owners of Lands* v. *People*, 113 Ill. 296.

The organization can not be attacked collaterally,—for such purpose the proper remedy is *quo warranto*. *Blake* v. *People*, 109 Ill. 504.

All objections which might have been made on appeal are waived. They can not be urged in any other manner. *Blake* v. *People*, 109 Ill. 504.

It is a question of jurisdiction. If errors not jurisdictional were committed, the remedy is by appeal. *Keigwin* v. *Drainage Comrs.* 115 Ill. 347; *Moore* v. *People*, 106 id. 376.

The legality of the formation and organization can not be inquired into in chancery. *Evans* v. *Lewis*, 121 Ill. 478.

The curative act of 1885 must be liberally construed to promote drainage, and the reclaiming of wet and overflowed lands. *Lees* v. *Drainage Comrs.* 24 Ill. App. 487.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This action originated by a bill in chancery by appellants, against appellees, in the circuit court of Iroquois county, to enjoin the collection of a special assessment and the payment of certain bonds. A writ having issued in vacation, appellees appeared at the March term, 1889, of said court, and moved to dissolve the injunction and dismiss the suit, on bill and answers. The motion was allowed, and a decree rendered accordingly. This is an appeal from a judgment of the Appellate Court for the Second District affirming that decree.

The Milk Grove Special Drainage District was organized February 26, 1885. On August 1, following, the commissioners, with the assistance of one Croswell, as civil engineer, located certain work to be done in the district, and estimated the cost thereof at $14,000. That work consisted of a single

drain, designated on the plat as "Main Line Ditch." On the 10th of the next December the lands of the district were classified, and on January 20, 1886, a levy made of $14,047.50, to construct that drain. On the 9th of August, 1886, before the work on the main ditch was completed, the commissioners located eighteen lateral ditches, the estimated cost of which was $20,000, and on October 11 of that year they made a second special assessment of $20,407.50. This assessment was made upon the former classification, and for the purpose of raising funds to construct said lateral ditches. It is admitted that no notice of the location of these lateral drains was given by the commissioners, though it is averred in the answer that the complainants had actual knowledge of all the proceedings in relation thereto, and of work done thereon, long prior to the filing of their bill.

Appellants insist that the commissioners had no legal right to make the last named ditches, and therefore no power to make an assessment to pay for them. Hence they say, the second special assessment was levied without authority of law, and file this bill to enjoin its collection. If these officers were authorized by the statute to make the assessment, then mere irregularities in the proceedings under which it was made would not give a court of chancery jurisdiction to restrain its collection. (*Chicago, Burlington and Quincy Railroad Co.* v. *Frary et al.* 22 Ill. 34; *Merritt et al.* v. *Farris,* id. 303; *Keigwin et al.* v. *Drainage Comrs. of Hamilton Township et al.* 115 id. 347.) The element of fraud does not exist in this case.

Section 56 of the Drainage act of 1885 (3 Starr & Curtis, p. 224,) is as follows: "The commissioners, as soon as they are elected or appointed and qualified, shall go upon the land included in said drainage district, and determine upon a system of drainage, which shall provide main outlets of ample capacity for the waters of the district, having in view the future contingencies as well as the present. A competent engineer shall be employed to locate and advise upon the character of

the work to be done, and report in writing, with maps, profiles and estimates of cost, and, in a general way, the benefit to accrue to the lands in the several localities of the district. They shall make, or cause to be made, a map or plat of the district, and of the work to be done therein, which map shall show, with reasonable certainty, the location of the proposed work, and they shall give a name or number to each ditch or drain. The maps and papers showing the final determination as to the system of drainage shall be filed in the clerk's office and be recorded in the drainage record."

Appellants maintain, when this duty has been performed the plans for the drainage of the district thereby become fixed, and the commissioners can not change them until all the work embraced in the system first adopted has been completed. Conceding that no section of the statute expressly confers the power upon drainage commissioners to change a system of drainage once adopted, we think that power clearly exists by implication. There is certainly nothing in the statute prohibiting such changes, and a moment's reflection will convince any one that the object of the organization of all drainage districts, viz., the drainage of the lands therein, would be greatly embarrassed, and often defeated, if those having the work in charge had not the power to correct mistakes made by themselves or their engineer in adopting a system. The first duty of the commissioners is to afford the district a system of drainage which will protect all the lands in it. If their first efforts to do so prove unavailing, the duty is not performed, neither is their power in that regard exhausted. Suppose an engineer makes a mistake in his survey of the work, and after his plans have been adopted and recorded the commissioners become convinced that the system adopted will not effectually drain the district,—will not accomplish the object for which the district was organized,—are they powerless to change it? Must the district be abandoned, or its money expended without benefit?

Section 41 of the same act gives the commissioners power, even after the original plans have been carried out, to so change them that all lands in the district, so far as practicable, shall receive their proper and equal benefits, as contemplated when the lands were classified, and, if sufficient funds are not on hand for that purpose, to make a new levy. It could scarcely be seriously contended, that the commissioners of this district, after becoming convinced that the first system adopted would not accomplish the original purpose, were powerless to change it while the original work was unfinished, but could, after having expended the funds of the district (it may be uselessly) in finishing that work, lawfully locate additional drains. Such a construction would often lead to the expenditure of district funds in completing work of no practical value to the district.

It is earnestly contended, that to hold that the plans of work may be changed after being once adopted, is to clothe the commissioners with a dangerous power. As before stated, the object of such organizations is to afford drainage to the lands of the district. It is made the duty of its officers to adopt a system which will best accomplish that object, and their action in that regard is not subject to review, unless they act fraudulently. The system adopted by them, and the estimated cost of the work, are not matters to be submitted either to the county court or the people of the district, as is assumed in the argument on behalf of appellants. Therefore, whether their first plans are adhered to, or changed before the work is completed, or after it has been practically tested, their power is the same,—no more dangerous in the one case than in the other.

An argument against the view here expressed, as to the power of commissioners to change their original plans, is attempted to be drawn from section 21 of the Drainage law. That section requires the commissioners, as soon as the plans for the work have been determined upon, to proceed to make special assessments for benefits, by classifying the lands in

the district according to the benefits to be received by the contemplated drainage, and it is provided by said section that such classification, when established, shall remain as a basis for such levy of taxes as may be needed for the lawful and proper purposes of the district. Subsequent sections provide for an appeal from such classification by any person interested. Assuming that the benefits to different tracts of land in the district could not be relatively the same after the change of plans as before, it is argued that appellants were deprived of the right to question the fairness of the classification upon which their lands were assessed by the second levy. The classification under section 21 is undoubtedly made on the plans then adopted, but it is also made upon the supposition that those plans, when completed, will effectually drain the lands of the district. When those plans fail to accomplish that purpose, and others are adopted which will, the commissioners do no more than make the system conform to the classification. Had the commissioners gone on and completed the original plan, and it had proved inadequate, under section 41 they might have put in these lateral ditches, if they were necessary to carry out the original purpose, "to the end that all lands, so far as practicable, should receive their proper and equal benefits, as contemplated when the lands were classified." The change here, as there, is made for the purpose of conferring the "benefits as contemplated when the lands were classified."

It is to be observed that there is no averment in this bill that the plans first adopted would have proved sufficient, or that the additional ditches are not necessary to complete the system of drainage for the district.

For the reasons stated, no notice of the change of plans or of the second levy was necessary. See, also, *The People ex rel.* v. *Chapman,* 127 Ill. 387.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*