RICE, County Treasurer, et al. v. JEROME.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1899.)

No. 1,231.

1. TAXATION—PROPERTY OF CORPORATION—EFFECT OF INSOLVENCY.

The insolvency of a private corporation, or the appointment of a receiver therefor at the suit of creditors, does not affect the status of its property as to taxation or the lien of a purchaser at tax sale thereon; and where the taxes were legally assessed and due, and the sale was regular, the corporation or its receiver can only extinguish such lien in the same manner as an individual owner, which, under the statutes of Colorado as construed by its supreme court, is by payment to the holder of the tax certificate of the amount for which the property was sold, together with the interest and penalties provided by law. The holder of the certificate is not required to file his claim with the receiver, as a creditor.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The decisions of the supreme court of a state, construing its revenue laws, are binding on the federal courts in that state.[1]

3. TAXATION—REDEMPTION FROM TAX SALE—EFFECT OF IRREGULARITY.

The fact that a tax sale is irregular, where the property was legally assessed and the taxes due, does not relieve the owner from the obligation to pay the interest and penalties prescribed by statute in order to redeem from such sale.

4. SAME—SUIT TO CANCEL TAX-SALE CERTIFICATE—NECESSITY OF TENDER.

In the federal courts the payment or tender by the owner of land of the amount of taxes for which it was sold, together with the interest and penalties to which the holder of the tax certificate is entitled under the state laws, is an indispensable condition precedent to his right to maintain a bill in equity to cancel such certificate.

5. SAME—RIGHT OF PURCHASER TO TAX DEED—PROPERTY IN HANDS OF RECEIVER.

The fact that lands are in the possession of a receiver of a federal court, as a part of the assets of an insolvent corporation, does not affect the right of a purchaser of such lands at tax sale to demand and receive a deed therefor, where entitled thereto under the state laws.

Appeal from the Circuit Court of the United States for the District of Colorado.

Henry K. Pomeroy and Cornelius B. Gold filed their bill in equity in the circuit court of the United States for the district of Colorado, alleging, in substance, that they were creditors of the Colorado Coal & Iron Development Company, a Colorado corporation; that the company was insolvent, and unable to pay its taxes and other debts; that it owned a large amount of property, which would be sacrificed unless the court would appoint a receiver of its property, to "hold, manage, and control the same subject to its orders and directions." The bill prayed, among other things, that all the creditors of the company might be enjoined from collecting, or taking any steps to collect, their debts against the company, or to enforce their liens upon its property,

---

[1] For state laws as rules of decision, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; and Hill v. Hite, 29 C. C. A. 553.

and that, after adjusting the equities and priorities of the creditors in the company, all the property of the company be sold, "and its affairs settled in full." The company confessed the bill. John L. Jerome, the appellee, was appointed receiver in accordance with the prayer of the bill, and on the 1st day of October, 1898, filed the bill in this case, alleging, in substance, that on the 16th day of December, 1895, certain lands belonging to the company, situated in Pueblo county, Colo., were sold by the then treasurer of the county for the taxes levied and assessed thereon for the year 1894, and purchased by Abel Kidd, one of the appellants; that the treasurer executed and delivered to Kidd tax certificates of sale for the lands purchased by him; and that he is now the owner and holder of the same. It was further alleged that Kidd had not presented his claim to the receiver under the order of the court requiring all creditors of the company to present their claims against the company within a given time, and that he is intending to demand, and, if possible, obtain, from Ward Rice, one of the appellants and the present treasurer of the county, a tax deed conveying to Kidd the lands of the company purchased by him at the tax sale. It is alleged that the required notice of the sale of the lands for taxes was not given, and that the tax sales were irregular and void. The prayer of the bill was that it be decreed that Kidd was not entitled to assert any claim against the lands, by reason of his failure to present his claim to the court in compliance with its orders requiring the creditors of the company to present and file their claims, or if, in the judgment of the court, he had not for this reason forfeited all right to assert any claim against the lands, then that the court ascertain the amount lawfully due him, to the end that steps might be taken, under direction of the court, to raise the funds necessary to clear the title to the lands from any claim arising out of the tax sales, and that the appellant Kidd be enjoined from demanding, and the appellant Ward Rice from executing, a tax deed to Kidd for the lands. An injunction was issued in accordance with the prayer of the bill. The answer denied that the tax sale was invalid for any reason, and asserted that the sale was valid and regular, and that the appellant Kidd was entitled to a tax deed for the lands. The answer further alleged "that, at the time of the delivery by the treasurer of Pueblo county to respondent Abel Kidd of the several certificates of purchase for the lots and parcels of land described in said bill of complaint, said Abel Kidd paid to the said treasurer in cash the several amounts bid for said lots and parcels of land, which said sums of money amounted in the aggregate to five thousand seven hundred and two and $39/100$ dollars. And respondents further allege that, under the revenue laws and the statutes of the state of Colorado, the real property so sold to said respondent Kidd is subject to redemption, by the person having by law the right to redeem, only upon payment of the amount for which the same was sold, with interest thereon from the date of sale at the rate of thirty-six per cent. per annum for the first six months, thirty per cent. per annum for the subsequent six months, and for the remaining period at the rate of twenty-four per cent. per annum; that there is due to said respondent Kidd upon the certificates of purchase so held by him the sum of five thousand seven hundred and two and $39/100$ dollars, being the amount paid at said sale, together with the sum of four thousand six hundred and eighteen and $91/100$ dollars for interest to December 15, 1898, under the provisions of the statute in that behalf provided, no part of either of which said sums of money has ever been paid to said respondent Kidd, nor has the complainant or any other person or persons whomsoever at any time ever tendered to said respondent Kidd, or offered to pay to him, or to said respondent Ward Rice, as treasurer of Pueblo county, for the use of said Kidd, either the amount for which said parcels of property were sold, or any part thereof, or the interest on said sum due as aforesaid, or any part or portion thereof." Upon final hearing the court decreed that the receiver should within 15 days from the date of the decree pay to the defendant Kidd, or his solicitor, the sum of $5,691.69, with interest thereon at 8 per cent. since the 16th day of December, 1895, up to the date of such payment; and, upon such payment being made, the defendant Kidd was required to surrender his tax certificates to the receiver for cancellation, and was perpetually enjoined from demanding or receiving a tax deed for the lands embraced in the tax certificates, and the de-

fendant Ward Rice and his successors in office were perpetually enjoined from making or issuing a tax deed to Kidd for such lands. From this decree the defendants appealed to this court.

John S. Macbeth, for appellants.

Thomas H. Hood, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is conceded that the lands of the company purchased at the tax sale were subject to taxation; that the taxes thereon had been legally levied and assessed, and were due and unpaid at the date of the tax sale. In the view we take of the case, it is not necessary to determine whether there are any irregularities in the tax sale which would avoid it. The circuit court did not, as is erroneously assumed by counsel in their briefs, decree that the tax sale was irregular or void. The decree is silent upon that subject.

The Colorado Coal & Iron Development Company was a private corporation, formed for pecuniary profit, and owing no duty to the public. In the matter of taxation, such a corporation stands on the footing of a natural person. Its insolvency does not exempt its property from taxation or from the operation of the revenue laws of the state, or in any manner interfere with the due execution of those laws, or with the rights of persons acquired under them. Nor does the appointment of a receiver for such a corporation operate to annul or extinguish the lien acquired by a purchaser of its lands at a tax sale. The holder of the tax certificates was not, therefore, required to present his certificate to the court, under its order requiring the creditors of the company to present their claims. The insolvency of the company, and the appointment of a receiver of its property, in no manner affected the validity and force of valid liens on its property, whether such liens were acquired by purchase of its lands at a tax sale or otherwise. The legal and equitable right acquired by the purchaser of the company's lands at a tax sale, and which might have been successfully asserted against the company, may be asserted against the receiver of its property.

It is the settled construction of the statutes of Colorado that before lands sold at a tax sale for taxes legally assessed and due can be recovered from the holder of the tax title, or his lien thereon for the taxes and penalties canceled, the owner must pay to the holder of the tax title the amount for which the lands sold at the tax sale, together with the interest and penalties provided by the laws of the state. Morris v. Bank, 17 Colo. 231, 29 Pac. 802; Mitchell v. Arkell, 3 Colo. App. 253, 32 Pac. 720; Knowles v. Martin, 20 Colo. 392, 393, 38 Pac. 467; Crisman v. Johnson, 23 Colo. 264, 47 Pac. 296; Charlton v. Kelly, 24 Colo. 273, 50 Pac. 1042; Rustin v. Tunnel Co., 23 Colo. 350, 47 Pac. 300. In the case of Charlton v. Kelly, supra, the supreme court of Colorado said:

"When the recovery of possession is by an action, or where, as in the case at bar, the object of the action is to remove a cloud or to quiet title, it is only fair, where it appears the taxes were legally assessed and due, for which the

97 F.—46

sale was made, that the owner should, before receiving a decree in his favor, pay, not only taxes paid by the defendant after the sale, together with interest, but also the amount for which the same was sold at the tax sale, together with the interest and penalties provided by law."

In the case from which we have quoted, the court points out that the amount of the interest and penalties which the holder of a tax title is entitled to receive is definitely fixed by sections 3904 and 3905 of Mill's Annotated Statutes of Colorado. The taxes on the company's lands, for which they were sold, being "legally assessed and due," this case falls exactly within the rule laid down in Charlton v. Kelly, supra. The circuit court disregarded this rule, and only required its receiver to pay the sum paid for the lands at the tax sale, and 8 per cent. interest, whereas it should have required the payment of the interest and penalties specified in the sections of the statute hereinbefore referred to. The decisions of the supreme court of a state, construing and expounding its revenue laws, are binding upon the federal courts in that state.

Assuming, but not deciding, that the tax sale was irregular, that fact—the taxes on the land being legally assessed and due—does not exempt the owner from the obligation to pay the interest and penalties prescribed by the statute. The fact is recognized that the titles acquired at tax sales are frequently—we might say generally—invalid for some irregularity in the sale. This is so well known that there would be few bidders for lands sold at tax sales if the purchasers had to rely solely on maintaining the validity of the sale, and lost their investment when that proved to be invalid. Such a rule would encourage delinquency, and discourage the sale of delinquent lands, and practically deprive the state of her taxes on lands whose owners chose not to pay them. It is therefore the policy of the state to encourage the purchase of delinquent lands at tax sales by giving the purchaser who pays the taxes of the delinquent owner a lien on the land for the taxes paid, with liberal interest and penalties, whether the sale be valid or invalid. The delinquent owner who fails to discharge his obligation to the state by paying the taxes on his lands is not to be rewarded for his delinquency, and his obligation to pay the taxes and the interest and penalties thereon is not affected by any irregularity in the sale. This policy is not confined to the state of Colorado. It prevails in other states. In Coats v. Hill, 41 Ark. 149, the supreme court of Arkansas says:

"By our law, taxes are glebæ ascripti,—serfs of the soil,—a charge which follows the land in whosesoever hands it may go. And if the tax sale may be invalid to devest the title of the former owner, by reason of irregularities and failure of the officers properly to discharge their duties, yet the purchaser is subrogated to the lien of the state."

And it is held in a long line of cases in that state that this subrogation extends to and includes the interest and penalties prescribed by law, and that it extends, also, to taxes subsequently paid on the land by the holder of the tax title.

The circuit court erred in entertaining the bill at all. The plaintiff did not pay or offer to pay the taxes, interest, and penalties to which the holder of the tax certificates was clearly entitled on the face of

the bill. In the federal courts such payment or tender is an indispensable condition to the right of the owner to maintain a bill in equity to cancel the tax-sale certificates, or remove the cloud cast by them upon his title. Whitehead v. Trust Co. (C. C. A.; decided at the present term) 98 Fed. 10, and cases there cited. The case last cited disposes, also, of the contention that the holder of the tax certificates should not be permitted to demand and receive the deed for the lands embraced therein, because they were, in contemplation of law, in the custody of the receiver. Without repeating it, we affirm what is there said on this point. The decree of the circuit court is reversed, and the cause is remanded, with instructions to dismiss the bill for want of equity.