## WHITEHEAD et al. v. FARMERS' LOAN & TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. November 6, 1899.)

### No. 1,075.

**1. Taxation—Suit to Enjoin Issuance of Tax Deed—Necessity of Tender**

Where a state has provided a system of laws for the levy and collection of taxes, which includes the enforcement of taxes when delinquent by a sale of the property, it is essential to the efficiency of such system that a purchaser at a sale made thereunder should be protected in all the rights given him by the statute as fully as are the officers charged with the enforcement of the laws; hence where property was subject to taxation, was legally assessed, and the taxes thereon were legally levied, and it has been offered for sale and sold by the county for such taxes, the purchaser is not a mere volunteer, and the owner is no more entitled to maintain a suit in equity to enjoin the issuance to him of a deed on the ground of irregularity in the sale, without having tendered the amount of taxes legally due, together with the interest and penalty provided by statute, than he would be to maintain such a suit against the county or its officers to restrain a sale of the property.

**2. Same—Property in Possession of Receiver.**

The fact that real property sold by a county for delinquent taxes is in the possession of the receiver of a court, as a part of the assets of an insolvent corporation, does not afford any ground for enjoining the issuance to the purchaser of a tax deed therefor.

Appeal from the Circuit Court of the United States for the District of Colorado.

The Lakewood & Golden Railroad Company, a corporation of the state of Colorado, being the owner of a line of railroad extending from Denver, through Arapahoe county, to Golden, in the adjoining county of Jefferson, on November 1, 1890, executed a mortgage conveying its entire property to the Farmers' Loan & Trust Company, the appellee, as trustee, to secure the payment of an issue of bonds. In July, 1896, this trustee instituted a suit in the United States circuit court for the district of Colorado to foreclose the mortgage. A receiver was appointed, and took provisional possession of the property. The taxes assessed by the county of Jefferson against the railroad company for the year 1893 were not paid, and on November 26, 1894, the taxes still remaining unpaid and delinquent, the treasurer of the county sold that portion of the railroad track located within the confines of Jefferson county to one M. G. Palmer for $1,665.59, and issued a certificate of purchase therefor to him, who soon thereafter assigned the same to W. H. Whitehead, one of the appellants. The taxes for the year 1894 not having been paid by the railroad company when due, Whitehead, on August 28, 1895, paid the same, amounting then to $1,374.37, and an entry showing such payment was made on the certificate of purchase then held by him. In due course of time, Whitehead demanded from the treasurer of Jefferson county a tax deed, based on his alleged right thereto

as holder of the certificate of purchase. Thereupon this suit was instituted by the appellee to enjoin the execution of such a deed. The bill sets out the facts already stated, and further alleges, in substance, that Whitehead is claiming and demanding from the receiver appointed in the main case the sum of $5,002.47, as the amount due under and by virtue of his ownership of the certificate of purchase and subsequent payment of taxes by him; that the sale by the treasurer of Jefferson county in 1894 was void, because it was an attempt to segregate and sell a part of an entire line of railroad, instead of the whole thereof; that Whitehead was a volunteer in paying the taxes to the county of Jefferson, and well knew the facts above stated; that the execution of the deed, as demanded by Whitehead, would be an interference with the property in the custody of the court through its receiver, and would constitute a cloud upon the title of the railroad property. The prayer of the bill is for an injunction restraining the treasurer of the county from executing and delivering the tax deed to Whitehead, and restraining Whitehead from demanding such deed, as well as for other and general relief. To this bill a demurrer was interposed, for the reason, among others, that the allegations of the bill were insufficient to entitle complainant to any relief. This demurrer was heard by the trial court, and overruled. An interlocutory injunction was awarded restraining the treasurer of the county and Whitehead, as prayed for. From this order an appeal has been duly prosecuted to this court.

Gustave C. Bartels (James H. Blood, on the brief), for appellants.

Charles W. Waterman (Edward O. Wolcott, Joel F. Vaile, Herbert B. Turner, David McClure, and Louis B. Rolston, on the brief), for appellee.

Before CALDWELL and SANBORN, Circuit Judges, and ADAMS, District Judge.

ADAMS, District Judge, after stating the case as above, delivered the opinion of the court.

The only question presented for our determination is whether the order for an interlocutory injunction was warranted by the averments of the bill. Counsel for appellee, in argument and brief, disclaim any contention that there was any irregularity in the assessment of the property of the railroad company, and admit that the taxes for the year 1893, as well as for the year 1894, were legally assessed, and never paid by the railroad. The bill in no way challenges the regularity of the sale of the railroad property to Palmer, except that there was an attempt to segregate a part of the railroad track from the entire line, as well as from the franchise of the railroad company, and to sell the same substantially as real estate is sold under execution in the state of Colorado. The bill does not aver that the amount demanded by Whitehead as due him by virtue of his ownership of the certificate of purchase and subsequent payment was in excess of the amounts paid by him, with the accumulated statutory interest. There are no averments showing that the appellee, or any one else, prior to the institution of this suit, ever offered to refund to Whitehead the amount due him, or that the appellee was ready to pay the same to Whitehead as a condition to obtaining the relief sued for. The order for the interlocutory injunction appears to have been made without imposing any such condition upon the appellee. The serious contention presented by counsel for the appellee is that the sale of the track of the railroad situated in Jefferson county, segregated from the balance of the line and from the franchise of the com-

pany, was not warranted by law, and this court is asked to declare such a sale void, and, as a result thereof, to affirm the unconditional order awarding an interlocutory injunction in this case. Counsel for appellants take issue with this main contention of the appellee, and further insist that the appellee's bill is without equity, because unattended with any payment or offer to pay the amount of taxes conceded to have been paid by Palmer and the appellant Whitehead for the years 1893 and 1894, with the accumulated interest thereon. In the view we have taken of this case, the last question is the only one which at the present time demands attention.

The appellee, the complainant below, being the trustee in the mortgage referred to, represents the bondholders, who, according to the averments of the bill and exhibits filed therewith, are, to all intents and purposes, the owners of the railroad property. The burden of paying the taxes upon the property, therefore, rests upon them, and the consequences of nonpayment concern them alone. In other words, the appellee, as representative of the bondholders, to all equitable intent and purpose, stands in the shoes of the railroad company. It was therefore the equitable duty of the appellee to attend to the payment of all taxes lawfully assessed against its property as and when due; and, notwithstanding any irregularities in subsequent proceedings looking to the enforcement of the state's lien for such taxes, it remained the duty of the appellee to pay and satisfy all just and lawful taxes, with accrued charges, until such time as the duty should be performed. If this duty be neglected until the state or some of its municipalities are forced to resort to the process of law to enforce its performance, it is not apparent how the equitable obligation is thereby lessened. Accordingly, it is our opinion that the appellee cannot invoke the aid of a court of equity to relieve it from the consequences of some irregularity in proceedings rendered necessary by its default, without first doing equity by paying, or offering to pay, as a condition to the relief sought, the amount which it, or those it represents, justly and fairly owe. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 669; Bank v. Kimball, 103 U. S. 732, 26 L. Ed. 469; Chicago, B. & Q. R. Co. v. Board of Com'rs of Norton Co., 32 U. S. App. 227, 67 Fed. 413, 14 C. C. A. 458; Charlton v. Kelly, 24 Colo. 273, 50 Pac. 1042.

The general doctrine of the foregoing cases we do not understand to be seriously questioned by counsel for appellee. It is practically conceded, as we understand, that, if this was a proceeding against Jefferson county or any of its officers to restrain the collection of the tax, it could not be maintained without a precedent offer to pay the amount of tax justly due; but it is contended that Whitehead, the appellant, stands in a different attitude from that of the officers of the county; that he is a mere volunteer, and purchased the property, not because he had any personal interest to protect, but merely as and for an investment; that the taxes, by reason of the payments by Whitehead, have been fully paid to the county; and that neither the county nor its officers have any longer any interest in the matter, and accordingly that the injunction constitutes no interference with the collection of taxes.

We are unable to appreciate the force of this distinction. The state of Colorado has provided a legislative scheme, not only for assessing taxes, but for securing their prompt payment. As a part of this scheme, purchasers at delinquent tax sales, in the event of redemption by the owner, are allowed to demand, as a condition to the exercise of that right, not only the amount paid by them at the sale, but also the amount of subsequently accruing taxes paid by them, with liberal interest on the money so employed until the right of redemption is exercised, and, in the event of no redemption by the owner, are entitled, after a lapse of time fixed by the statute, to a conveyance by the county treasurer of the lands which were purchased by them at the tax sale. Sections 3900, 3905, Mills' Ann. St. Colo. If the officers of the state, or any municipal subdivision of the state, cannot be interfered with in the performance of their duty by the owner, until he shall do equity by paying the taxes justly due, it is, in our opinion, equally true and important that the purchasers who come to the aid of the state in the performance of its functions should not be interfered with without a like offer to do equity. If the sale to such purchaser is irregular, or if, for any reason other than that the land was not subject to taxation, it is ineffectual to carry title, it is not reasonable that such purchaser should be deprived of equitable protection any more than the officers of the county who take the first step towards collecting the revenue. The efficiency of the whole scheme must be maintained, or it fails to accomplish its purpose. If it were understood that a purchaser at a sale of lands for delinquent taxes is a mere volunteer, and not entitled to the protection of equitable principles in case of the invalidity of the sale because of some mere irregularity attending it, there would probably be few purchasers, and, as a result, the machinery of the state for securing its revenue would be seriously crippled. We see no reason why a rule should be applied to this case different from that applicable to one which might have been brought against the officers of the county in an earlier stage of the process of collecting its revenue. The following authorities sustain this conclusion: Willson v. Brown, 82 Ind. 471; Morrison v. Jacoby, 114 Ind. 84, 14 N. E. 546, and 15 N. E. 806; City of Logansport v. Case, 124 Ind. 254, 24 N. E. 88; Charlton v. Kelly, supra.

It is further contended by counsel for appellee that the fact that the property of the railroad company is in the custody of the court, through its receiver, is of itself sufficient to secure an interlocutory injunction; and this, for the reason that the execution of the deed by the county treasurer would constitute an unwarrantable interference with property in custodia legis. Counsel rely in support of this contention upon the cases of Clark v. McGhee, 31 C. C. A. 321, 87 Fed. 789, and In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689. In the first of these cases it appears that, after the receiver had taken possession of property, an assessment for taxes unassessed for previous years was made by the state authorities. The validity of this assessment was disputed by the receiver, and the court very properly held that, until its validity could be tried and determined, the hands of the executive officers of the state should be stayed. In the other case it appears that the state officers levied for the satisfaction of

taxes upon 14 cars of the railroad then in actual use for conducting the business by the receiver in charge. The receiver brought his bill for an injunction, alleging the illegality of a part of the assessment, the payment of all taxes admitted to be due, and the injury to the business of the railroad occasioned by the seizure of cars necessary for, and actually used in, carrying on the business of the receiver. The allegations of the bill in that case show a physical invasion of the custody of the receiver,—an actual and forcible seizure of the property in his hands. In addition to this, there was a real controversy with respect to the liability of the property for the payment of the taxes involved. Neither of these facts exists in the case now under consideration. Here there was no seizure of any property, and no interference, or threatened interference, with the receiver's possession or custody, but only an attempt to perfect an incipient title by taking the required statutory steps to that end. If a deed should be executed by the treasurer to Whitehead, and he should attempt to take possession of the property conveyed to him, the court in charge of the receiver will undoubtedly be able to protect his possession, when disturbed or threatened to be disturbed, with due consideration to the rights of all parties interested in the same. In this way the court can assert its lawful right to exclusive custody and control, and the state will not be embarrassed by any unwarranted interference with its own process for collecting its revenue. The interlocutory injunction was, in our opinion, improperly granted, and the order awarding the same is hereby vacated and annulled.