## Case No. 4,913.

### FOOTE v. LINCK et al.

[5 McLean, 616.] [1]

Circuit Court, D. Ohio. Oct. Term, 1853.

Worthington & Stanbery, for plaintiff.
Atty. Gen. Pugh, for defendants.

OPINION OF THE COURT. During the late term a bill was filed by the complainant, a citizen of Connecticut, against the defendants, in which was set out the charter of the trust company, showing that there was a provision in it declaring, that the capital stock should be taxed no higher than the stock of other banks of the state. Also, that a proposition being made by the legislature to the banks of the state, if they should cease to circulate notes of a less denomination than five dollars, they should not be taxed more than at the rate of 5 per cent. on their dividends. That the trust company bank accepted the proposition, called in its small notes, and filed the evidence of the fact in the au-

[1] [Reported by Hon. John McLean, Circuit Justice.]

ditor's office, as required by the act; and that for many years the tax was on the dividends as proposed; that by a late law the tax was imposed more than ten times greater than the tax before assessed on the capital of the company; that under the law for the collection of such tax on banks, the auditor was required to appoint a commissioner for the collection of such tax, to whom he issued his warrant as the law authorizes, requiring him to make a demand of the tax, which, if not paid in five days, the commissioner is authorized to enter the bank by force, open its vault, and take therefrom the amount of the tax and penalties, in gold and silver, &c. The tax demanded by the commissioner under the above act for the years 1851 and 1852, with the penalties thereon, amounting to the sum of ninety-six thousand dollars, to which was to be added five per cent. for poundage to the commissioner, and an additional penalty of five per cent.

The complainant alleges that he holds fifty shares of stock in said company, which is now at par or above it; that the said law impairs the obligations of the contracts before stated, and is consequently void under the constitution of the United States; that he has applied to the trustees of the bank, who have taken no step to arrest the collection of the tax above stated; and represents that if the money shall be collected and paid over to the state treasury, the injury to himself and the bank will be irremediable, and he prays an injunction against the commissioner, the auditor of state, and the trustees of the company. Notice having been given to the commissioner, that an application would be made to the circuit court at its late term, at Columbus, for an injunction, which application being made, in pursuance of the notice, there being no opposition, the circuit court, on the face of the bill, ordered the injunction to issue, but, at the same time, the court said. a motion would be heard to dissolve the injunction during the term. A motion to dissolve being made, it was agreed that it should be argued before the circuit judge at Cincinnati, at chambers. On the 18th day of November, at Cincinnati, the above motion came up for argument. And it was argued by the attorney general for the state, Mr. Pugh, in favor of the motion, and by Messrs. Worthington and Stanbery for the complainants.

The attorney general distinguished this case from that of Osborne v. Bank of U. S. [9 Wheat. (22 U. S.) 738]. The tax in that case was one hundred thousand dollars, when the whole amount of the capital in both the branches of the United States Bank. in this state, amounted only to the sum of one hundred and fifty thousand dollars. The tax, therefore, it was said by the supreme court, would be destructive of the branch of the bank in Ohio. And this was one of the grounds on which the opinion of the supreme court was founded. It was also an inter-ference with one of the fiscal agents of the government, and was not within the taxing power of the state. It was also objected that all the directors were not made parties. The attorney general mainly contended, that the complainant, as a stockholder, could not sue the directors; that the bill was filed for himself, and not in behalf of others; that it might be the wish of the trustees to pay the tax; that the bill asked the court to take the power from the trustees, as given to them by the charter, which would, in effect, wind up the concerns of the bank, and a number of authorities were cited as sustaining the positions taken. The attorney general also contended that the tax was not ruinous to the bank, and that if the money were collected, provision was made for the re-payment of it, should the law under which it was assessed, be decided by the supreme court of the United States, to be unconstitutional.

The above is a very general statement of the argument of Mr. Pugh—nothing more than an outline of it is attempted to be given. Mr. Worthington opposed the positions of Mr. Pugh, observing that he appeared as well for the trustees as for the complainant. Mr. Stanbery also considered the argument of the attorney general, and submitted his views as to the merits of the case.

It cannot be considered as any disparagement to the state court, that a citizen of another state sues in the federal court. The constitution and the act of congress, give him this right. In the exercise of it, he does no more than every suitor in the state court, who brings his action in one of the courts of the state, which may be a matter of choice or accident. No reason is ever assigned by a citizen of another state, that he cannot obtain justice in the state courts. Such a suggestion would not be tolerated, and the bill would be dismissed for impertinence, if the objectionable part were not stricken out.

The complainant being a citizen of Connecticut, has a right to sue in this court, if he has made a case for the exercise of jurisdiction by the circuit court. He has stated an interest in the trust company, which the law will protect, against the threatened injury complained of, if that injury be irremediable, and the mode of relief be within the powers of a court of chancery. It does not follow that the right asserted, is hostile to the powers of the trustees, because they are made defendants. From the facts stated in the bill, it appears the right of the claimant and the relief asked, in no respect interfere with the powers of the trustees. It is true. the complainant asks that the trustees may be enjoined from paying over the tax to the state; but there is enough on the face of the bill to show, that the suit of the complainant was brought to protect the rights of the trust company, and consequently the rights of the trustees. That this may be done, is a familiar principle of chancery.

The court will decree as between the parties on the record, whether they be complainants or defendants. The court having jurisdiction under the bill filed by the complainant, can protect the rights of the trustees, though defendants, the same as if they were complainants. And chancery often, in such a case, decrees between conflicting rights of defendants. This doctrine is laid down in both the volumes of Story's Equity. It has been often acted upon by the supreme court. In the case of Piatt v. Oliver [Case No. 11,115], and a great many other defendants who were citizens of Ohio, and therefore could not be made complainants in the case, but their interest was the same as that asserted by the complainant, the court gave relief to the defendants, the same as the plaintiff, according to their respective rights. This case was appealed to the supreme court, and the decree of the circuit court was affirmed. Id. [3 How. (44 U. S.) 333]. The case of Chiles v. Boon, 10 Pet. [35 U. S.] 177, is to the same effect. The trustees being citizens of Ohio, could not be made complainants, but being made defendants, they are before the court, and the court having jurisdiction from the citizenship of the complainant, can act upon the right, and for the protection of the parties, the same as if the trustees were complainants.

The injunction was allowed upon the face of the bill; the demurrer now filed, admits the statements of the bill, as far as they are correctly pleaded. If no contract has been impaired, the demurrer filed raises the question for the decision of the court. That question has not been argued, and I am glad that it has not. The principal reliance seems to be a want of jurisdiction in the court, in the form in which the suit has been brought. The supreme court of the state has decided that the tax has been imposed under a constitutional law, and that the mode of collecting it is legal. But this decision, I understand, has been taken to the supreme court of the United States, by a writ of error. A case thus situated, cannot be considered as one of authority, as it is still pending in the supreme court, and may be reversed. If the supreme court shall affirm the judgment of the state court, it being the same question as involved in this case, the circuit court will, as a matter of course, dissolve this injunction without argument. I can entertain no doubt of the jurisdiction on the points made. It is fit that the supreme court should act upon this great question; and, as it is before the court, and will be acted on in the course of two or three months, I deem it, therefore, inexpedient to dissolve the present injunction. It has been argued that until the right be established at law, an injunction should not be granted. The lord chancellor,—if my memory serves me.—Eldon, once decided, so I think, in an application for an injunction on a patent right. But his lordship was mistaken, as is shown by the action of a court of chancery, before and since his decision. In this country, an injunction has been usually granted against a threatened wrong, for which, if done, the law can give no adequate redress. In answer to this, it is said, a remedy by mandamus is provided for by law, where a tax is illegally assessed and collected. But it might become a question, whether the circuit court, under the state law, could issue the mandamus provided for; and if it could, it would be in the power of the legislature to repeal the law giving the remedy. The money collected being paid over into the state treasury, could not be recovered by suit, as the state cannot be sued. The remedy against the auditor and the commissioner might be attended with insurmountable difficulties. The poundage at five per cent., amounting to five thousand dollars, which the commissioner will receive as his compensation for the service, could not be recovered from the state.

The attorney general moved that the money be brought into court, which the judge refused, as, in his judgment, there could be no safer depository than that of the vaults of the trust company. Complaint being made of the insufficiency of the security given by the complainant, the judge observed that he supposed there could be no objection to any amount of security which, in reason, might be required; he, therefore, ordered that a bond in two hundred thousand dollars be given, conditioned to pay the whole amount of tax claimed by the state, if this bill shall be dismissed, and the injunction be dissolved. If, however, the injunction shall be dissolved, the auditor and commissioner may proceed in the summary mode authorized by the statute, to enter the bank and seize the money, if it shall not be paid within the five days after demanded. The bond has been given, as required, and has been transmitted to the clerk of the circuit court.