## Case No. 5,350.

### GEORGIA v. ATKINS.

[1 Abb. U. S. 22;[1] 35 Ga. 315; 8 Int. Rev. Rec. 113; 1 Am. Law T. Rep. U. S. Cts. 105.]

Circuit Court, N. D. Georgia. 1866.

JURISDICTION OF CIRCUIT COURTS—TAXATION OF CORPORATIONS.

1. The circuit courts are competent to take cognizance of an action prosecuted by a state.

2. The circuit courts have power, in a proper case, to grant an injunction against threatened proceedings of a collector of internal revenue, to collect a tax which is not authorized by act of congress.

3. The word "corporation," as used in a revenue law declaring that every person or corporation owning a railroad, &c., shall be subject to a tax in respect thereof (Act June 30, 1864, § 103; 13 Stat. 275), as amended by Act March 3, 1865 (14 Stat. 135), does not include a state. A railroad wholly owned by a state, managed by state agents, and the profits of which form a part of the revenue of the state, is not liable to taxation under such a law.

[Cited in U. S. v. Baltimore & O. R. Co., 17 Wall. (84 U. S.) 328.]

Demurrer to a bill in equity.

Mr. Fitch, U. S. Dist. Atty., in support of demurrer.

Law and Jackson, for complainants.

ERSKINE, District Judge. This is a bill in equity filed in this court by the state of Georgia against James Atkins, the defend-

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

ant, collector of the Fourth collection district of this state, under the internal revenue law of the United States; praying that a writ of injunction may be granted to restrain the defendant from further proceeding in the collection of the sum of six thousand and four dollars and fifty-six cents, claimed to be due to the United States, under section 103 of that law, from the Western & Atlantic Railroad.

The bill alleges that this railroad is the property of the state of Georgia exclusively; that the entire net income of this railroad forms a part of the revenue of the state, and is applied to the support of its government; and that the superintendent is the mere agent of the state, and has no authority over the road or its income which is not specifically given to him by the act of the state. The following portion of the bill, showing its general scope and object, may be cited at length: "And your orator further complains, and says, heretofore, on the tenth day of May, eighteen hundred and sixty-six, the said James Atkins, collector of the internal revenue of the United States, as aforesaid, gave notice to Campbell Wallace, the superintendent of said railroad, that he, the said superintendent, should pay to him, the said collector, the sum of six thousand and four dollars and fifty-six cents ($6,004.56), the said sum being demanded as revenue tax of the United States on six hundred and forty thousand one hundred and eighty-two dollars and forty-nine cents, gross earnings of said road for five months and two days, to the twenty-eighth day of February, eighteen hundred and sixty-six; and that should he, the said superintendent, fail to make said payment by the twentieth day of May following, that he, the said collector, would issue and have levied upon said railroad and its property a distress warrant for said amount, with ten per cent. added thereto."

The defendant has demurred to the whole bill. This admits all the facts in the bill that are well pleaded.

From the view which I take of this suit, it will not be necessary to pass upon more than two of the questions discussed.

The first matter for inquiry is that of jurisdiction. The district court of the United States for the Northern district of Georgia has, by the act of congress approved August 11, 1848 (9 Stat. 280), annexed to it the powers of a circuit court. The circuit courts of the United States are courts of special and limited jurisdiction, deriving all their powers from the constitution and the acts of congress.

I will briefly endeavor to ascertain whether this court has jurisdiction of the parties.

In the case of Pennsylvania v. Wheeling & B. Bridge Co., 13 How. [54 U. S.] 516, it was asserted in explicit language by Mr. Justice McLean, who delivered the opinion, and also by Mr. Chief Justice Taney, in his dissenting opinion, that the suit might have

been instituted in the circuit for the Western district of Pennsylvania, instead of originally presenting it to the supreme court.

And as to the controversy: the first part of section 2 of the act of March 2, 1883 [4 Stat. 632], provides, "that the jurisdiction of the circuit courts of the United States shall extend to all cases in law and equity, arising under the revenue laws of the United States, for which other provisions are not already made by law." It will be observed that the jurisdiction here conferred by congress does not depend upon the amount in dispute, nor the citizenship of the parties.

The case of Cutting v. Gilbert [Case No. 3,519], assessor, and Shook, collector of the Thirty-Second collection district of the city of New York, was a suit in equity, instituted by the complainants in the circuit court of the United States for the Southern district of New York, for themselves, as well as all others in interest who might come in, &c., against the defendants, to enjoin the assessment and collection of a tax claimed by those officers to be due to the United States under section 99 of the national internal revenue law, for bonds, stocks, &c., bought and sold by claimants, as licensed brokers and bankers. Because, among other things, of the joinder of improper parties, the injunction was denied by the court, and the parties left to their remedy at law. But Mr. Justice Nelson, in delivering the opinion, said: "The second section of the act of congress of March 2, 1833, known as the 'Force Act,' confers jurisdiction in express terms, and which has been applied to this act by its fiftieth section. And jurisdiction had previously, and has since, been upheld and exercised upon general principles of equity jurisprudence." [Osborn v. Bank of U. S.] 9 Wheat. [22 U. S.] 739, 903; [State Bank v. Knopp] 16 How. [57 U. S.] 369; [Dodge v. Woolsey] 18 How. [59 U. S.] 331; [Jefferson Branch Bank v. Skelly] 1 Black [66 U. S.] 436; pamphlet, containing argument of Mr. Courtney, United States district attorney, in behalf of the defendants, and the decision of Judge Nelson, New York, 1865, p. 27.

The preceding extract is a direct authority on the question under immediate consideration; and, for myself, I entertain no doubt whatever of the jurisdiction or power of this court, if the tax sought to be collected is illegal, unwarranted by the act of congress, to interpose by writ of injunction, and arrest the threatened invasion of the property of the complainant.

One other question only need be the subject of examination, and that is whether, under the internal revenue laws, it was the intention of congress that a duty or tax should be collected out of the property owned, controlled, and managed solely by a state; for it is admitted in the pleadings that the Western and Atlantic Railroad is the property of the state of Georgia, exclusively, and that the net income arising from the road is revenue applied to the support of the government of the state. Section 103 of the act of congress of June 30, 1864 (13 Stat. 275), as amended by that of March 3, 1865 (14 Stat. 135), declares "that every person, firm, company, or corporation, owning or possessing or having the care and management of any railroad, canal, steamboat, ship," &c., "engaged or employed in the business of transporting passengers or property for hire, or in transporting the mails of the United States, . . . . shall be subject to and pay a duty of two and one-half per centum upon the gross receipts of such railroad, canal, steamboat, ship," &c. The question, narrowed to a point, is this: Does the word or term "corporation," for the purposes of this act, and as herein used, include the term "state?" The United States is formed of a number of states or commonwealths united together, and these constitute one general government. The state of Georgia is an integral and indissoluble part of the United States; but it is, nevertheless, in the meaning of the public law, a state. When the term "corporation" is applied to a nation or a state, it is employed in its most extensive signification; and thus used, the United States or commonwealths composing the Union may be termed "corporations." But when the term "corporation" is directed or refers to those artificial persons, bodies corporate or politic, instituted for the promotion or advancement of religion, learning, or commerce, and for various other objects, public or private, where charity, industry, skill, and speculation can be freely and advantageously employed. and which owe their existence, name, powers, and duration to a government, it is used in its ordinary, and, to the common understanding, explicit sense. Is the former or the latter application of the term the fair and legitimate one intended by the act?

Now in order to arrive at the intention of the lawgiver the whole and every part of the statute should be considered in determining the meaning of any of its parts; taking the words to be understood in that sense in which they are generally used by those for whom the law was intended, and discarding all subtle and strained construction for the purpose of limiting or extending their operation or import. In the case of Martin v. Hunter, 1 Wheat. [14 U. S.] 326, Mr. Justice Story, in delivering the opinion of the court, said that "words are to be taken in the natural and obvious sense, and not in a sense unreasonably restricted or enlarged." And in Dunn v. Reid, 10 Pet. [35 U. S.] 524, it was remarked by Mr. Justice McLean, in pronouncing the decision of the court, that "cases may be found where courts have construed a statute most liberally to effectuate the remedy; but where the language of the act is explicit, there is great danger in departing from the words used, to give an effect to the law which may be supposed to have been designed by the legislature." I am of the opinion that congress intended the term "corporation," as used in this act, to be understood in its general, ob-

vious, and natural meaning; and, therefore, it does not include the term "state." And so far as my limited researches go, I am unable to discover a single case in the supreme court, or in any of the circuit or district courts of the United States, wherein it has been decided that the term "corporation"—body corporate or politic—when used in a statute, includes a "state," or where the one term is used as a synonym for the other.

It is therefore ordered that the demurrer be overruled; and that the writ of injunction issue in accordance with the prayer of the complainant, upon giving bond in the sum of thirty thousand dollars.

Order accordingly.