## NATIONAL BANK *v.* KIMBALL.

1. As a general rule, the owner of taxable property, who seeks to enjoin the collection of a tax thereon, which he alleges to be in excess of what is lawful, must first pay or tender so much thereof as is justly due.

2. A bill to restrain the collection of a State tax upon the shares of a national bank is bad on demurrer, where it does not appear that there is any statutory discrimination against them, or that they, under any rule established by the assessing officers, are rated higher in proportion to their actual value than other moneyed capital.

3. The bill in this case avers that the same percentage is assessed on such shares as on other property, and that they are rated at about one-half their actual value. No case for relief is made by averring that the assessments are unequal and partial, and some other property is rated for taxable purposes at less than one-half of its cash value.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. D. K. Tenney* and *Mr. J. M. Flower* for the appellant.
*Mr. Consider H. Willett, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

This is a bill in chancery, filed by The German National Bank of Chicago, to enjoin Kimball, collector of the town of South Chicago, from enforcing payment of the taxes assessed against the holders of shares of its stock.

The general grounds on which this relief is sought are two-fold, namely: that the assessment violates the provision of the act of Congress concerning national banks, which forbids the States from taxing these shares at any higher rate than other moneyed capital within the State; and that it also violates the provision of the Constitution of Illinois concerning uniformity of taxation. From the decree dismissing the bill on demurrer, this appeal has been taken.

The bill is made up of averments which are intended to show that the valuation of the property of other persons in the same town, made by the same assessor, is less in proportion to its actual cash value than that of the complainant's shares; that the same is true in other parts of the State; that some corporations are favored in this valuation, and that certain classes of

property are favored in a general way. But there is no distinct averment that the shares of this bank are valued higher for the purpose of taxation than other moneyed capital generally, though this is alleged in regard to particular instances. The allegations are pretty full that the assessments are partial, unequal, and unjust, and do not result in the uniformity of taxation which the Constitution of Illinois requires.

But we think there are two fatal objections to the bill.

The first of these is that there is no offer to pay any sum as the tax which the shares of the bank ought to pay.

We have announced more than once that it is the established rule of this court that no one can be permitted to go into a court of equity to enjoin the collection of a tax until he has shown himself entitled to the aid of the court by paying so much of the tax assessed against him as it can be plainly seen he ought to pay; that he shall not be permitted, because his tax is in excess of what is just and lawful, to screen himself from paying any tax at all until the precise amount which he ought to pay is ascertained by a court of equity; and that the owner of property liable to taxation is bound to contribute his lawful share to the current expenses of government, and cannot throw that share on others while he engages in an expensive and protracted litigation to ascertain that the amount which he is assessed is or is not a few dollars more than it ought to be. But that before he asks this exact and scrupulous justice he must first do equity by paying so much as it is clear he ought to pay, and contest and delay only the remainder. *State Railroad Tax Cases*, 92 U. S. 575.

The bill attempts to evade this rule by alleging that the tax is wholly void, and, therefore, none of it ought to be paid, and that by reason of the absence of all uniformity of values, it is impossible for any person to compute or ascertain what the stockholders of the complainant bank ought to pay on the shares of the bank. In the case just cited this court said, in answer to the first objection: "It is clear that the road-bed within each county is liable to be taxed at the same rate that other property is taxed. Why have not complainants paid this tax? It is said they resist the rule by which the value of their road-bed in each county is ascertained. But surely they

should pay tax by some rule. . . . Should they pay nothing, and escape wholly, because they have been assessed too high? These questions answer themselves. Before complainants seek the aid of the court to be relieved of the excessive tax, they should pay what is due. Before they ask equitable relief, they should do that justice which is necessary to enable the court to hear them." Id. 616.

In the same case the court said : " It has been repeatedly decided that neither the mere illegality of the tax complained of, nor its injustice, nor irregularity, of themselves give the right to an injunction in a court of equity." The authorities there cited support the proposition. The whole extent of the injustice complained of in this bill is the inequality of the actual assessment, and for this it is argued the whole tax of the township is void ; and as the bill seeks to bring into view the inequality as regards other counties in the State, it follows that, if it be sustained, the entire tax of the State for that year must be declared void, in order that the complainant may be relieved of a few thousand dollars and entirely escape taxation for that year.

In the same case this court said : " Perfect equality and perfect uniformity of taxation, as regards individuals and corporations, or the different classes of property subject to taxation, is a dream unrealized. It may be admitted that the system which most nearly attains this is the best. But the most complete system which can be devised must, when we consider the immense variety of subjects which it necessarily embraces, be imperfect. And when we come to its application to the property of all the citizens, and of those who are not citizens in all the localities of a large State like Illinois, the application being made by men whose judgments and opinions must vary as they are affected by all the circumstances brought to bear upon each individual, the result must inevitably partake largely of the imperfection of human nature, and of the evidence on which human judgment is founded." p. 612.

These principles are sufficient to decide the case, and were declared by this court in a case arising in the same State and under the same Constitution and revenue laws with the one now before us.

An apparent exception to the universality of the rule is admitted in *People* v. *Weaver*, 100 U. S. 539, *Pelton* v. *National Bank*, 101 id. 143, and *Cummings* v. *National Bank*, id. 153. It is held in these cases that when the inequality of valuation is the result of a statute of the State designed to discriminate injuriously against any class of persons or any species of property, a court of equity will give appropriate relief; and also where, though the law itself is unobjectionable, the officers who are appointed to make assessments combine together and establish a rule or principle of valuation, the necessary result of which is to tax one species of property higher than others, and higher than the average rate, the court will also give relief. But the bill before us alleges no such agreement or common action of assessors, and no general rule or discriminating rate adopted by a single assessor, but relies on the numerous instances of partial and unequal valuations which establish no rule on the subject.

So far as anything of the kind is to be inferred, it is that shares of national bank stock, including the complainant's, were assessed at only thirty-four per cent of their value, which, by the board of equalization, was raised to fifty-three per cent; and other property more, and still other less.

The case, then, made by the complainant is this: that the shares of the bank are taxed at the same per cent on their assessed value as all other property; that the valuation of these shares, on which this rate is apportioned, is only about half their actual value; that some other property is valued at less than half of its cash value, and for this reason no tax should be paid on the shares of stock of the complainant.

And if any should be paid at all, the sum which may in the end be found justly due, and which, during the four or five years of this litigation, must be paid for the support of the government by some one else, shall remain in the complainant's vaults until it is ascertained precisely to the last dollar what each share should pay.

We think the Circuit Court did not err in dismissing such a bill.

*Decree affirmed.*