144 So. 93

### CITY OF GADSDEN et al. v. AMERICAN NAT. BANK.

7 Div. 137.

Supreme Court of Alabama.

June 18, 1932.

Rehearing Denied Oct. 27, 1932.

M. C. Sivley, of Gadsden, for appellants.

Inzer, Inzer & Davis, of Gadsden, for appellee.

PER CURIAM.

This bill is filed by the appellee, American National Bank, against the respondents, John A. Camp, as tax collector of Etowah county, and as ex officio tax collector of the city of Gadsden, and the city of Gadsden, a municipal corporation, to use the language of ap-

pellee's brief, "for the purpose of enjoining said John A. Camp, as Tax Collector of Etowah County, Alabama, and as Tax Collector of the City of Gadsden, from levying on any of the property of the appellee or of its shareholders, and from selling the same for the payment of any taxes assessed against the corporate shares of appellee; and also to restrain such Tax Collector from collecting such taxes and from threatening, harassing or vexing the complainant or its stockholders in an effort to collect the same or any part thereof."

The ground upon which the bill rests the right to relief is: "That a large amount of moneyed capital in the hands of individual citizens, corporations and other organizations which is exempt from taxation or which was not taxed at as great a rate as assessed against the corporate shares or capital stock of appellee, was used in competition with appellee in the territory in which it did business. The contention of the appellee in said bill is that section 5219 of the Revised Statutes of the United States, as amended, being section 548, title 12, of the United States Code Annotated, prohibited the State of Alabama, and its political subdivisions from taxing complainant's corporate shares or capital stock at a greater rate than is assessed upon other moneyed capital coming into competition with the business of appellee, and that, therefore, the tax which the said John A. Camp was attempting to collect on the shares or capital stock of the American National Bank was illegal," etc.

■ "It must be regarded as settled, that taxpayers can not resort to a court of equity, to enjoin the collection of a tax claimed to be illegal, unless with the illegality of the tax there is connected some recognized ground of equitable jurisdiction." City Council of Montgomery v. Sayre et al., 65 Ala. 564; City of Ensley v. McWilliams, 145 Ala. 159, 41 So. 296, 117 Am. St. Rep. 26; Adams, Tax Collector, et al. v. Southern Railway Co., 176 Ala. 320, 58 So. 397; Mayor, etc., of Mobile v. Baldwin, 57 Ala. 61, 29 Am. Rep. 712.

In the case first above cited, a bill filed to enjoin a municipal corporation from collecting an illegal tax, it was observed: "If bills of this kind could be entertained, municipal corporations would be placed at the mercy of reluctant and litigious tax-payers, embarrassed in all their operations, and incapable of preserving the peace, order, and proper government of the localities to which their powers extend." City Council of Montgomery v. Sayre et al., 65 Ala. 564, 566.

And in Mayor, etc., of Mobile v. Baldwin, 57 Ala. 61, 72, 29 Am. Rep. 712: "Admitting the tax is illegal and void, the corporation is merely pressing the payment of an unfound-ed, unjust demand, and threatening the commission of a personal trespass, to compel payment. If it persists, the complainants have an adequate remedy at law. In Dillon on Munic. Cor. § 738, it is laid down that 'equity will not restrain even an illegal and void tax assessment where it is sought to be enforced against *personal property only*, since here the party has an adequate remedy at law; nor in such a case will equity interfere because several join in the bill asking it.' In Dows v. City of Chicago, 11 Wall. 108 (20 L. Ed. 65), which was *a bill to enjoin the city from collecting a tax on shares of the capital stock of a national bank*, the court says: 'Assuming the tax to be illegal and void, we do not think any ground is presented by the bill justifying the interposition of a court of equity to enjoin its collection. The illegality of the tax and the threatened sale of shares for its payment constitute themselves alone no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisdiction, before the preventive remedy by injunction can be invoked.'" This is a case in point, and is in harmony with the most recent decisions of the United States Supreme Court. Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447; Stratton, Secretary of State of Illinois v. St. Louis Southwestern Railway Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465.

Nor does the bill bring the case within the influence of Shanks et al. v. Winkler et al., 210 Ala. 101, 97 So. 142. There the levy was a special tax for school purposes, and the single levy covered a period of six years, and the levy constituted a lien on all the lands within the school district, and constituted a cloud on the title of the taxpayer, and it was there observed: "The tax has been levied for a period of 6 years, and will be collected annually, so that a multiplicity of actions at law will be necessary for its recovery from year to year in the absence of the equitable relief sought by the bill. The case averred involves no necessity for an apportionment of taxes, no occasion for a new assessment, no interference with the regular revenue of the state or county, and, in our judgment, the considerations stated above suffice to sustain the equity of the bill." Shanks v. Winkler, 210 Ala. 103, 97 So. 142, 143.

■ That is not so here. The levy is for a single tax year, and the tax may be paid under protest, and, if illegal, may be recovered in a single action at law, at the suit of appellee. Ward, Tax Collector, v. First Nat. Bank of Hartford (Ala. Sup.) 142 So. 93.[1] This affords a complete and adequate remedy at law. Matthews v. Rodgers, supra.

[1] Ante, p. 10.

We are therefore of opinion that the bill is without equity, and the circuit court in equity erred in overruling the demurrer to the bill and in granting the injunction, and the decree of the circuit court is reversed and one here rendered sustaining the demurrer and dissolving the injunction, and the cause will be remanded.

Reversed, rendered, and remanded.

All the Justices concur, except THOMAS, J., who dissents.

THOMAS, J. (dissenting).

The suit was for injunction to prevent the collection of city taxes alleged to be illegally assessed (under authority of section 3095 of the Code), and the fact of illegality is set up by extraneous facts that are averred.

The trial court overruled demurrers to the bill and granted the temporary injunction conditioned upon the giving of the bond prescribed by the decree. The ruling on demurrer presents the appeal of the city of Gadsden.

In a case where there is the right of injunction to preserve the statu quo, or protect from irremedial injury, etc., injunction pendente lite may issue on sufficient bond of indemnity, with or without notice, as warranted by the facts, and prior to the filing of answer. Section 8304, Code; Lynne v. Ralph, 201 Ala. 535, 78 So. 889; Kirk v. McTyeire, Mayor, et al., 209 Ala. 125, 95 So. 361.

It is the general rule that, unless some recognized ground of equitable interference is shown, "other than mere illegality, hardship, or irregularity in respect of the levy or assessment of the tax, a bill to enjoin its collection will not be entertained." Shanks et al. v. Winkler et al., 210 Ala. 101, 97 So. 142, 143, to restrain the enforcement of a special school tax; Adams Tax Collector, et al. v. Southern Railway Co., 167 Ala. 383, 52 So. 439, action to recover the payment of a special road tax levied by the county; Mayor, etc., of Mobile v. Baldwin, 57 Ala. 61, 71, 29 Am. Rep. 712, bill to enjoin collection of tax for county purposes on personal property, and denied on grounds of mere illegality; Alabama Gold Life Ins. Co. v. Lott, Tax Collector, 54 Ala. 499, 508, 509, sought to enjoin collection of taxes on money loaned; Town of New Decatur v. Nelson, 102 Ala. 556, 15 So. 275, injunction against the collection of municipal taxes where the corporate limits are enlarged; Adams, Tax Collector, v. Southern Railway Co., 176 Ala. 320, 323, 58 So. 397, to enjoin collection of tax for county purposes; City of Ensley v. McWilliams, 145 Ala. 159, 41 So. 296, 117 Am. St. Rep. 26, bill to enjoin the city from selling lands for taxes; Oates v. Whitehead, Tax Collector, 173 Ala. 209, 55 So. 803, sought to enjoin the raising of taxes by the state

tax commission; Strenna City Council of Montgomery, 86 Ala. 340, 5 So. 115, injunction against the sale of land for municipal taxes.

Speaking generally, where the municipal tax is illegal, because levied (1) under an unconstitutional statute, or (2) for an unlawful purpose, or (3) assessed on persons or property not subject to taxation, it has been held sufficient grounds to justify a court of equity to enjoin the proceedings, provided the circumstances bring the case under the recognized head of equity jurisdiction, or there is no adequate remedy at law for redress of the injury. 37 Cyc. 1258, 1259; City Council of Montgomery v. Sayre, 65 Ala. 564; Mayor, Aldermen, etc., of Mobile v. Baldwin, supra; Town of New Decatur v. Nelson, supra; Mayor & Council of Albertville v. Rains et al., 107 Ala. 691, 18 So. 255; City of Ensley v. McWilliams, supra, bill for municipal taxes alleged to be unconstitutionally levied was denied; City of Albany v. Spragins, 214 Ala. 449, 108 So. 32, where the question was the illegality of the city tax and sought injunction on the ground of multiplicity of suits.

In the federal courts the following earlier decisions support the foregoing rule where equity assumed jurisdiction: Clearwater Timber Co. v. Nez Perce County (C. C.) 155 F. 633; McKnight v. Dudley, 148 F. 204, 78 C. C. A. 162; Louisville, etc., R. Co. v. Wright (C. C.) 116 F. 669 [affirmed in 117 F. 1007, 54 C. C. A. 672 (reversed on other grounds in 195 U. S. 219, 25 S. Ct. 16, 49 L. Ed. 167)]; Gillette v. Denver (C. C.) 21 F. 822; Albany City Bank v. Maher (C. C.) 6 F. 417, 424, 19 Blatchf. 175; City Nat. Bank v. Paducah, 5 Fed. Cas. 755, No. 2,743, 2 Flip. 61; Foote v. Linck, 9 Fed. Cas. 366, No. 4,913, 5 McLean, 616; Georgia v. Atkins, 10 Fed. Cas. 241, No. 5,350, 1 Abb. U. S. 22, 35 Ga. 315. See 45 Cent. Dig. tit. Taxation, § 1231; 37 Cyc. 1260. And in 3 A. L. R. 1371, cases supporting the foregoing rule by the United States Supreme Court and later District and Circuit Courts, as to the relief in equity and by injunction, are collected as follows: Pelton v. Commercial Nat. Bank (1880) 101 U. S. 144, 25 L. Ed. 901; Cummings v. Merchants' National Bank (1880) 101 U. S. 153, 25 L. Ed. 903; New York ex rel. New York Clearing House Bldg. Co. v. Barker (1900) 179 U. S. 279, 21 S. Ct. 121, 45 L. Ed. 190; 9 Rose's Notes, pp. 926, 927, 929; Railroad and Telephone Cos. v. Board of Equalizers of Tennessee (C. C. 1897) 85 F. 302; Nashville, C. & St. L. R. Co. v. Taylor (C. C. 1898) 86 F. 168, appeal dismissed in (1899) 20 S. Ct. 1022, 44 L. Ed. 1219; Taylor v. Louisville & N. R. Co. (1898) 88 F. 350, 31 C. C. A. 537, 60 U. S. App. 166; Southern R. Co. v. North Carolina Corp. Commission (C. C. 1900) 104 F. 700; Louisville & N. R. Co. v. Coulter (C. C. 1903) 131 F. 282, reversed in (1905) 196 U. S. 599, 25 S. Ct. 342, 49 L. Ed. 615; Michigan R. R. Tax Cases

(C. C. 1905) 138 F. 223, affirmed in (1906) 201 U. S. 245, 26 S. Ct. 459, 50 L. Ed. 744; State ex rel. Gottlieb v. Western U. Teleg. Co. (1901) 165 Mo. 502, 65 S. W. 775, affirmed in 190 U. S. 412, 23 S. Ct. 730, 47 L. Ed. 1116. The cases of Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447; and Stratton, Secretary of State of Illinois v. St. Louis Southwestern Railway Co., 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465, were for injunction as to collection of state tax, and did not touch upon the rights of a national bank in respects for decision here.

In People of State of New York v. Barker, 179 U. S. 279, 21 S. Ct. 121, 123, 45 L. Ed. 190, 193, it is declared:

"To raise the question which the plaintiff in error seeks, it was therefore obviously necessary to allege and prove as a fact that there was habitual violation of law by undervaluation; that, in the language of Mr. Justice Miller, in Albany County Supers. v. Stanley, 105 U. S. 305, 318, 26 L. Ed. 1044, 1121, the assessors 'habitually and intentionally, or by some rule prescribed by themselves or by someone whom they were bound to obey,' undervalued real estate for assessment in New York city; or, as stated in Cummings v. Merchants' Nat. Bank, 101 U. S. 153, 155, 25 L. Ed. 903, 904, that a rule or system of valuation had been adopted by those whose duty it was to make the assessment, which was designed to operate unequally and to violate a fundamental principle of the Constitution, and that such rule had been applied, not solely to one individual, but to a large class of individuals or corporations. It was said in that case that this was precisely the case made by the bill, and, if supported by the testimony, the court thought relief should be given. There was both allegation and proof.

"Both these cases related to the taxation of national bank shares, and the question was whether the tax levied violated the provisions of the national banking act on that subject."

In Coulter v. L. & N. R. Co., 196 U. S. 599, 25 S. Ct. 342, 344, 49 L. Ed. 615, 618, Mr. Justice Holmes observed: "We need not stop to show that so much of the bill as seeks an injunction against collecting the state tax, and the portion of the decree which orders a receipt to be executed on the part of the state, cannot be maintained. See Coulter v. Weir, 62 C. C. A. 429, 127 F. 897, 906, 912. On the other hand, in a proper case, a bill may be brought to restrain apportionment and certification to the counties. Fargo v. Hart, 193 U. S. 490, 495, 503, 48 L. Ed. 761, 764, 767, 24 S. Ct. 498."

In 3 A. L. R. pp. 1372, 1373, and 1374, under "Assessment of Property at Full Value," it is declared:

"In State ex rel. Gottlieb v. Western U. Teleg. Co. (1901) 165 Mo. 502, 65 S. W. 775, affirmed in (1903) 190 U. S. 412, 47 L. Ed. 1116, 23 S. Ct. 730, supra, the court, while holding that the decision must be against the corporation, since the action was at law, and only an equity proceeding could avail the corporation, also held that the evidence of systematic undervaluation of other property was not sufficient, even though the proceeding had been a proper one in equity. Although relief was denied, the decision quite strongly supports the general rule above stated. The court said: 'The defendant contends that it has been discriminated against, contrary to the provisions of § 4 of article 10 of the Constitution of Missouri, and of the 14th Amendment to the Constitution of the United States, in this: that the Constitution of Missouri relied on provided that "all property subject to taxation shall be taxed in proportion to its value," and the 14th Amendment to the Constitution of the United States prohibits any state to deny any person in its jurisdiction the equal protection of the laws, and that the state board of equalization has assessed defendant's property at its full value, while the local assessors throughout the state have only assessed the property of other persons at from 35 to 40 per cent of its value. In support of its contention the defendant cites a great number of cases, among them Cummings v. Merchants' Nat. Bank (1880) 101 U. S. 153, 25 L. Ed. 903; Nashville, C. & St. L. R. Co. v. Taylor ([C. C.] 1898) 86 F. 168, appeal dismissed in (1899) 44 L. Ed. (U. S.) 1219, 20 S. Ct. 1022; German Nat. Bank v. Kimball (1881) 103 U. S. 732, 26 L. Ed. 469; Pelton v. Commercial Nat. Bank (1880) 101 U. S. 143, 25 L. Ed. 901; Balfour v. Portland ([C. C.] 1886) 28 F. 738; Cincinnati Southern R. Co. v. Guenther ([C. C.] 1884) 19 F. 395; Chicago, B. & Q. R. Co. v. Republic County (1895) 14 C. C. A. 456, 32 U. S. App. 224, 67 F. 411; Chicago, B. & Q. R. Co. v. Atchison County (1895) 54 Kan. 781, 39 P. 1039; Stanley v. Albany County (1887) 121 U. S. 535, 30 L. Ed. 1000, 7 S. Ct. 1234. The principle here contended for is tersely expressed by Mr. Justice Miller in the case of German Nat. Bank v. Kimball (1881) 103 U. S. 732, 26 L. Ed. 469, as follows: "It is held in these opinions that when the inequality of valuation is the result of a statute of the state, designed to discriminate injuriously against any class of persons or any species of property, a court of equity will give appropriate relief; and also where, though the law itself is unobjectionable, the officers who are appointed to make assessments combine together, and establish a rule or principle of valuation, the necessary result of which is to tax one species of property higher than others, and higher than the average rate, the court will also give relief. But the bill before us alleges no such agreement or common action of assessors, and no

general rule or discriminating rate adopted by a single assessor, but relies on numerous instances of partial and unequal valuations, which establish no rule on the subject." * * * '

"In Railroad and Teleph. Cos. v. Board of Equalizers ([C. C.] 1897) 85 F. 302, supra, the holding that equity will interfere on the ground that the assessment violates both the uniform tax clause of the state Constitution and the equal protection clause of the United States Constitution is based upon the finding that there is no provision that property must be assessed at its full value; nevertheless, Judge Clark, in arguing the point, says: 'Conceding, for the purpose of testing the soundness of this proposition, that the constitutional term, "according to its value," means the same thing as "at its full value," the contention of the state then, stated with reference to its effect, is this: That it may assess the property of A at its full value, in obedience to the Constitution, and the property of D at one half of its value, in violation of the Constitution, and, when A complains that the result has been to violate the Constitution in respect to the equality provision, the answer is that the objection is not open to A, because he is taxed on no more than the full value of his own property, and that he must pay 50 per cent more on the same actual value than D. Now, it will certainly be admitted that the simple statement of such a proposition suggests its utter untenableness. If decisions may be found which apparently uphold a result such as this, they promulgate a doctrine which cannot be accepted as good law.' Another decision by the same judge (Nashville, C. & St. L. R. Co. v. Taylor ([C. C.] 1898) 86 F. 168, appeal dismissed in (1899) 44 L. Ed. (U. S.) 1219. 20 S. Ct. 1022) proceeds upon a similar basis, and the holdings are very materially strengthened by the decision in Taylor v. Louisville & N. R. Co. (1898) 31 C. C. A. 537, 60 U. S. App. 166, 88 F. 350, where the same conclusion is reached, the assessment having been made in the face of a statute requiring all property to be assessed at its full value. * * *

"In Southern R. Co. v. North Carolina Corp. Commission ([C. C.] 1900) 104 F. 700, supra, the court, in giving instruction to the standing master, adopted this same view of the matter, when it said: 'The Constitution of the state of North Carolina, and the acts of assembly passed under the authority thereof, require all real and personal property in the state to be assessed for taxation at its actual value in money. The Corporation Commission, which is intrusted with the assessment of railroad property for taxation, assessed the property of the several complainants at a certain sum each. The complainants thereupon come into this court, alleging that the method adopted with regard to them differs materially from the method adopted with regard to all other real and personal property in the state, so that they are exposed to unjust discrimination. On that allegation they ask an injunction. On the truth of that allegation depends the action of this court. It cannot assess the value of property, nor perform any of the functions of the assessor. It cannot pass upon the assessment, and say whether or not it be excessive, whether it be illegal, irregularly imposed, or unjust. State R. Tax Cases (1876) 92 U. S. 575, 23 L. Ed. 669. There must be some ground for the interference of a court of equity, and its interference cannot go to the reassessment of the property, but to the removal of the unlawful action. * * * '

"And in Michigan R. Tax Cases (1905) 138 F. 223, affirmed in (1906) 201 U. S. 245, 50 L. Ed. 744, 26 S. Ct. 459, the suit was dismissed on complainant's failure 'to show a fraudulent, intentional, systematic undervaluation of property,' assessed under a statute other than the one under which complainant's railroad properties were assessed. The court explained that the undervaluation required to justify interference must be systematic and intentional to that extent that, in effect, amounts to fraud. The case of Louisville & N. R. Co. v. Coulter (1903) 131 F. 282, directly supports the proposition stated supra; but the case was reversed in (1905) 196 U. S. 599, 49 L. Ed. 615, 25 S. Ct. 342, on the ground that a case of habitual and systematic undervaluation was not proved by the evidence.

"And in First Nat. Bank v. Christensen (1911) 39 Utah, 568, 118 P. 778, the court, while holding the evidence insufficient to show that the assessed value of plaintiff's property—national bank stock—was proportionally higher than the assessed value of other bank stock and other 'moneyed capital,' within the meaning of the statute providing for uniformity and equality of tax rates and valuations, said: 'Though the Constitution and the statute require the taxing officers to assess all taxable property at "its full cash value," yet, should taxing officers of a county assess real estate, live stock, merchandise, and chattels at 50 to 70 per cent of their actual or cash value, and moneys or shares of stock in manufacturing or industrial enterprises or investments, at their actual or cash value, the assessment would not be equal or uniform. In such case, those whose property was intentionally assessed at a higher percentage or valuation than was placed on the general mass of taxable property in the county may invoke the aid of courts to compel the taxing officers to reduce the excessive assessment so made, to the same proportion of value as was placed upon the general mass of other taxable property in the county. A denial of such right results in inequality and a want of uniformity in the assessment and taxation. Lively v. Missouri, K. & T. R. Co. (1909) 102 Tex. 545, 120 S. W. 852; Raymond

v. Chicago Union Traction Co. (1907) 207 U. S. 20, 52 L. Ed. 78, 38 [28] S. Ct. 7, 12 Ann. Cas. 757; Taylor v. Louisville & N. R. Co. (1898) 31 C. C. A. 537, 60 U. S. App. 166, 88 F. 364; 37 Cyc. 737. If, therefore, plaintiff's shares of stock were assessed at a value greater in proportion to that placed upon the general mass of taxable property in the county, it is entitled to have that value reduced to the proportion placed on such mass of taxable property.' "

In Fargo v. Hart, 193 U. S. 490, 24 S. Ct. 498, 501, 48 L. Ed. 761, 766, it is said as to injunction against the collection of county taxes: "It denied that under the Constitution it ought to pay anything, and it is plain that for the year 1898, at least, it properly could have been assessed but a comparatively trifling sum. The contention of the company was serious and plausible. It made the only offer it could, which was to give security for the payment of whatever amount should be adjudged to be due. 'If there was no right to assess the particular thing at all, * * * an assessment under such circumstances would be void, and, of course, no payment or tender of any amount would be necessary before seeking an injunction.' People's Nat. Bank v. Marye, 191 U. S. 272, 281, 48 L. Ed. 180, 24 S. Ct. 68, 71. See also Santa Clara County v. Southern P. R. Co., 118 U. S. 394, 30 L. Ed. 118, 6 S. Ct. 1132; California v. Central P. R. Co., 127 U. S. 1, 32 L. Ed. 150, 2 Inters. Com. Rep. 153, 8 S. Ct. 1073; Central P. R. Co. v. California, 162 U. S. 91, 112, 40 L. Ed. 903, 16 S. Ct. 766."

And in Cummings, Treas., etc., v. Merchants' National Bank of Toledo, 101 U. S. 153, 163, 25 L. Ed. 907, the matter was concluded by Mr. Justice Miller, saying: "Whatever may be its cause, when it is recognized as the source of manifest injustice to a large class of property around which the Constitution of the State has thrown the protection of uniformity of taxation and equality of burden, the rule must be held void, and the injustice produced under it must be remedied so far as the judicial power can give remedy. The complainant having paid to defendant, or into the Circuit Court for his use, the tax which was its true share of the public burden, *the decree of the Circuit Court enjoining the collection of the remainder is affirmed.*"

And in First National Bank v. City of Covington (C. C.) 103 F. 523, it was held the national bank was an agency of the United States and may protect its shareholders by bill to enjoin the collection of an invalid tax on stock; that is, a tax not assessed as Congress had consented. Des Moines Nat. Bank v. Thomas Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; First National Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 70 L. Ed. 295; Roberts, County Tax Collector, v. American Nat. Bank of Pensacola, 97 Fla. 411, 121 So. 554.

So much for the later general authorities seeking injunctive relief in courts of equity. Adverting to the recent cases in this jurisdiction, the case of Ward, Tax Collector, v. First Nat. Bank of Hartford (Ala. Sup.) 142 So. 93,[1] was a suit for illegal taxes paid by the national bank on shares of its capital stock on grounds now being considered and justified in the recovery under the statute. Section 3144, Code; Allred v. Dunn, Tax Col., 207 Ala. 469, 93 So. 390; Wall-Hay-Wall Lumber Co. v. Mathews et al., 211 Ala. 426, 100 So. 824.

In the case of Shanks et al. v. Winkler et al., 210 Ala. 101, 103, 97 So. 142, 143, this court, in considering the right of injunctive relief against the collection of assessment for special school tax covering a period of years, said: "The equity of the bill is placed upon two grounds: (1) That the record of the commissioners' court is regular in itself, disclosing no flaw in the proceedings for the authorization and collection of the tax in question, so that resort to evidence dehors the record is necessary to establish its invalidity, and hence that the record and the lien of the tax levied in pursuance thereof constitute a cloud upon the titles to all the lands in the school tax district; and (2) the tax has been levied for a period of 6 years, and will be collected annually, so that a multiplicity of actions at law will be necessary for its recovery from year to year in the absence of the equitable relief sought by the bill. The case averred involves no necessity for an apportionment of taxes, no occasion for a new assessment, no interference with the regular revenue of the state or county, and, in our judgment, the considerations stated above suffice to sustain the equity of the bill as against the contention that complainants should pay the tax and seek to recover it by actions at law. 1 High on Injunctions (4th Ed.) §§ 524, 525; Alabama Gold Life Ins. Co. v. Lott, 54 Ala. 499; Tallassee Mfg. Co. v. Spigener, 49 Ala. 264; Mayor, etc., v. Baldwin, 57 Ala. 71, 29 Am. Rep. 712. Appellees refer to section 2345 of the Code of 1907 as affording complainants, appellants, adequate relief at law; but our opinion is that this section does not reach to cases in which grounds of relief peculiar to equity are asserted."

After all that may be said on the question presented by the bill, the assessment of taxes against the corporate shares of the national bank is averred to be illegal and invalid, by reason of the extrinsic facts set up in that pleading, which show discrimination by the municipality in favor of other persons in that business area and jurisdiction who are in direct competition therewith in the exercise of its purpose and conduct of that national

[1] Ante, p. 10.

496

banking business, and not as Congress had assented. Ward, Tax Collector, v. First Nat. Bank of Hartford, ante, p. 10, 142 So. 93.

The decision of Shanks et al. v. Winkler et al., supra, was a relaxation of our old rule as indicated above.

In First National Bank of Hartford, Wis., v. City of Hartford, etc., 273 U. S. 561, 47 S. Ct. 462, 463, 71 L. Ed. 767, 59 A. L. R. 1, the holding was that national banks, their property, and their shares, can be taxed under state authority only as "Congress consents and then only in conformity with the restrictions attached to its consent"; and that "state legislation and taxing measures which by their necessary operation and effect discriminate against capital invested in national bank shares * * * are intended to be" and are "forbidden by U. S. Revised Statute, § 5219 [12 USCA § 548]," whether adopted in a friendly or hostile attitude—the intent is immaterial, it is the discrimination that is denied and held unlawful. Mr. Justice Stone concludes as follows: "But a consideration of the entire course of judicial decision on this subject can leave no doubt that state legislation and taxing measures which by their necessary operation and effect discriminate against capital invested in national bank shares in the manner described are intended to be forbidden. The questions here considered arising from the application of an ad valorem tax are not affected by the amendment of section 5219 by the Act of March 4, 1923, c. 267, 42 Stat. 1499 [Comp. Stat. § 9784, Fed. Stat. Anno. Supp. 1923, p. 84 (12 USCA § 548)], which permits in lieu of the ad valorem tax on shares of national banks either a nondiscriminatory tax on the income of national banks or on the income derived from their shares."

See, also, State of Minnesota v. First National Bank of St. Paul, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774.

The special equity here averred is:

" * * * That under Section 5219 of the Revised Statutes, as amended, of the United States, being Section 548 of Title 12 of the United States Code Annotated, and the laws of the United States in such cases made and provided the State of Alabama, its political subdivisions and the cities and municipalities therein, are prohibited from taxing complainant's corporate shares or capital stock at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of said State coming into competition with the business of complainant, complainant being, as aforesaid, a National Bank, organized and existing and operating under the National Banking Laws of the United States. * * *

"That the assessment of said taxes against the corporate stock of complainant in the hands of and owned by its stockholders is invalid and void because of illegal discrimination against complainant and its corporate stock and in favor of the moneyed capital of other persons, firms, corporations and associations coming in direct competition with complainant in the exercise of its legitimate purposes and business in lending money, discounting paper, and the like, in that such moneyed capital competing with complainant is not taxed or assessed for or liable for taxation under the laws of Alabama or of said County, or City, while the shares of capital stock of complainant are made liable to such assessments and taxes by the Statutes and Laws of said State, County and City. * * *

"That the said assessments, State, County, and City, for taxes for said tax year set out in the preceding section, and the proceedings leading up to and embracing said assessments, appear valid on their face, but for the reasons herein set out, are invalid and contravene the provisions of the Statute Laws of the United States above refered to; that said assessments are in the hands of said respondent, whose duty it is, unless restrained by this Court, to levy on the property of complainant for collection of said taxes, and complainant alleges that such assessments create a cloud on the title of complainant's real estate and other property of which it is now in possession of in said Etowah County, Alabama, and unless this Court enjoins or restrains the collection of said taxes, State, County and City, and removes the said cloud from complainant's title to its said property, then complainant will suffer damage and loss and cannot be relieved of the same except by the restraining order of this Court. * * *

"That until the legislature of Alabama amends the taxing laws herein complained of so as not to discriminate against the shares of stock in complainant's National Banking Association, and in the other National Banks located in Alabama, that any assessment against such share for taxes, State, County, and City, in said City of Gadsden, or said County of Etowah, will be illegal and void because of the discrimination outlined in this complaint, and if such assessments are made in said County for said State and County, and for said City, the same shall constitute a cloud on complainant's real and personal property located in said County. Such acts will continue as a source of harassment to complainant and the holders of its stock, and will result in a multiplicity of suits unless this Court enjoins and restrains said assessments being levied against complainant's corporate shares so long as such discriminatory laws of the State of Alabama remain in force."

The effect of the decisions is: (1) That the state law requires national banks to pay the stockholder's taxes assessed against the shareholder or his said shares, held by them

in national banks. See National Commercial Bank of Mobile v. Mayor, Aldermen & Common Council of Mobile, 62 Ala. 284, 34 Am. Rep. 15; Pollard v. State ex rel. Zuber, 65 Ala. 628; Maguire v. Board of Revenue & Road Com'rs of Mobile County, 71 Ala. 401; Ward, Tax Collector, v. First National Bank of Hartford (Ala. Sup.) 142 So. 93;[1] § 5219, U. S. Revised Statutes. (2) That *the bank* is an *agency* of the United States. First Nat. Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 70 L. Ed. 295; Ward, Tax Collector, v. First Nat. of Hartford, supra. (3) That the bank is *trustee* for the stockholder, and that payment under protest of an illegal tax so imposed by a *municipality* and the effort for its recovery by action at law is not an *adequate remedy* under the consent of Congress. (4) And that such bank as such trustee for the stockholder is liable to multiplicity of suits by such shareholders in the event of such illegal payment, and may have relief in equity against its collection by the municipality. 9 Rose's notes, pp. 929, 930, 933. (5) That where national banks are authorized to pay the taxes of shareholders as the owners of such shares, and pay the amount which is the true and proportionate share of the public burden, as to the ownership of such property, the collection of the balance wrongfully assessed will be enjoined on appropriate application. 9 Rose's Notes, p. 933; Cummings, Treas., etc., v. Merchants' National Bank of Toledo, 101 U. S. 153, 163, 25 L. Ed. 903; Greene v. L. & I. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Johnson v. Wells Fargo & Co., 239 U. S. 234, 36 S. Ct. 62, 60 L. Ed. 243; Evans v. National Bank of Savannah, 251 U. S. 108, 40 S. Ct. 58, 64 L. Ed. 171. The foregoing from the federal court should suffice.

However, we will note that it is observed by Mr. High that: "It will be found upon examination that courts of equity have been inclined in cases of assessments by municipal corporations to relax somewhat the stringency of the rule of non-interference as applied to the collection of state taxes, and relief by injunction has been more freely granted against the collection of municipal taxes than in cases affecting the collection of revenues by the state. And while it is difficult to perceive any sufficient reason for such distinction, the distinction itself remains." High on Injunctions (4th Ed.) p. 509, § 536. This distinction as to injunction, as affecting the collection of state and county taxes on the one hand, and municipal taxes on the other, has been recognized by this court (Adams, Tax Collector, v. Southern Railway Co., 176 Ala. 320, 58 So. 397; Stone v. Mayor, etc., of Mobile, 57 Ala. 61, 71, 29 Am. Rep. 712; City Council of Montgomery v. Sayre, 65 Ala. 564; Davis v. Petrinovich, 112 Ala.

654, 21 So. 344, 36 L. R. A. 615), and by digests of the decisions. 44 C. J. § 4571; 37 Cyc. 1258; 26 R. C. L. §§ 416–418.

We are of the opinion that the bill was within the recognized grounds for equitable interference to protect such assets of the national bank, as recognized in the federal authorities, and was within the influence of our latest authority. Shanks et al. v. Winkler et al., supra.

It is hardly necessary to observe that the decree for temporary injunction was not a final conclusion of the matter upon the facts, and was not intended and had not the effect of cutting off the city of Gadsden, or those acting in its behalf. There is no insistence, nor anything in the decree that would prevent the city from answering the bill and introducing proof in support thereof. If the decree had been intended to be final as to injunctive relief, and on the merits, no bond would have been required, as was done in the instant decree. Jesse French Piano & Organ Co. v. Porter et al., 134 Ala. 302, 307, 32 So. 678, 92 Am. St. Rep. 31.

I am therefore of opinion there was no reversible error in overruling the demurrer and in granting the temporary injunction. The court are not in accord with this result, believing the city's pleading merely presents a case of hardship, irregularity, or illegality in the threatened collection of municipal taxes on personal property, and that no recognized ground of equitable interference is shown under the earlier cases and the decision in Shanks et al. v. Winkler et al., supra; they are further of the opinion that the demurrer of the city of Gadsden should have been sustained.

I respectfully dissent.

On Rehearing.

PER CURIAM.

We do not think that the majority opinion is contrary to Cummings v. Merchants' National Bank, 101 U. S. 153, 157, 25 L. Ed. 903. It is there emphasized that "the bank as a corporation is not liable for the tax, and occupies the position of stakeholder, on whom the cost and trouble of the litigation should not fall. If it pays, it may be subjected to a separate suit by each shareholder. If it refuses, it must either withhold dividends, and subject itself to litigation by doing so, or refuse to obey the laws, and subject itself to suit by the State. It holds a trust relation which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it. To prevent multiplicity of suits, equity may interfere."

While under our law, Acts 1923, page 161, shares are assessed against the shareholders, it is also provided that "the bank shall pay

---

[1] Ante, p. 10.

for the shareholders respectively the tax so assessed, against their shares," and that "it shall be no ground of objection to such assessment of shares that it is entered upon the assessment book in the corporate name." Section 6. This court has carefully considered such theory of taxing national bank shares, and it of course follows in line with the United States courts that it is the distinct independent interest of the shareholder which is taxable by a state, together with its real property, and on shares held by it in other national banks, but not its capital. National Commercial Bank of Mobile v. Mayor, etc., of Mobile, 62 Ala. 284, 34 Am. Rep. 15; Sumter County v. National Bank of Gainesville, 62 Ala. 464, 34 Am. Rep. 30; Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; 37 Cyc. 830. On the general theory of taxing the shares of stock in a corporation, see Commissioners Court v. State, 172 Ala. 242, 55 So. 623.

■ We have shown that in Alabama there is provided not only an adequate remedy to test the legality of the assessment, but also to prevent a multiplicity of suits. Ward v. First National Bank (Ala. Sup.) 142 So. 93.[1] This is usually held to be sufficient to prevent injunctive relief. Indiana Mfg. Co. v. Koehne, 188 U. S. 681, 23 S. Ct. 452, 47 L. Ed. 651.

In National Commercial Bank of Mobile v. Mayor, etc., of Mobile, supra, equity relief was denied, though the theory of a multiplicity of suits was argued in brief.

In the Cummings' Case, supra, it also recognized the fact that there was a remedy by paying the tax under protest, and suing at law to recover it. But held that the bank was not in condition thus to protect itself, because of the matter which we have quoted from that case. Whereas, under our law the bank in this respect is not a mere stakeholder, but is required by law to pay the tax, and is debtor to the state for it. First National Bank v. Commonwealth of Kentucky, 9 Wall. 353, 19 L. Ed. 701.

Now if the tax is lawful, no one can complain on account of its payment by the bank; if it is not lawful, the bank may in one suit, in its own name, sue and recover it. Why would the bank which by our law is liable for the tax be thereby subjected to greater hardship, cost, or trouble than it would in a suit by it in equity to enjoin collection of the tax?

The other cases relied on by appellee are not authoritative respecting statutes such as ours. In Public Nat. Bank v. Keating (C. C. A.) 47 F.(2d) 561, the opinion uses the language of the Cummings' Case in describing the

effect of the statute of New York upon the relation of the bank to its shareholders in paying the taxes on its stock. In Charleston National Bank v. Melton (C. C. W. Va.) 171 F. 743, the same is true. Though it is made the duty of the bank to pay the tax, it is provided that the bank may recover the amount with interest from the owners, or deduct it from dividends accruing.

In the case of First National Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 70 L. Ed. 295, a similar bill was filed in Iowa. It was held by the United States Supreme Court that as the state court had treated it as cognizable in equity, it would be so treated in the United States court because in that respect the state law and procedure was controlling. The state Supreme Court affirmed a decree of the lower court sustaining a demurrer to the bill, but did not treat the equitable remedy sought. For that reason the United States court declined to do so. Id., 196 Iowa, 588, 192 N. W. 6.

The Supreme Court of Florida, without stating the effect of its statutes taxing bank shares, has recently sustained the equity of such a bill filed by a bank "on behalf of its stockholders" upon the authority of Hills v. National Albany Exchange Bank, 105 U. S. 319, 26 L. Ed. 1052, and First National Bank v. City of Covington (C. C.) 103 F. 523. See Roberts v. American National Bank, 97 Fla. 411, 121 So. 554. The case of Hills v. National Albany Exchange Bank, supra, was written by the same justice who wrote the Cummings' Case, supra, and without discussion asserted that the question is controlled by the Cummings' Case and by Pelton v. Commercial National Bank, 101 U. S. 143, 25 L. Ed. 901. The Pelton Case relates to the Ohio statute, as does the Cummings' Case. In Hills v. National Albany Exchange Bank, supra, there is no recital of the statutes of New York which applied. But it was treated inferentially as though they had the same effect as the statute of Ohio. In First National Bank v. City of Covington, supra, by a United States District Court of Kentucky, it is pointed out that there was no way to obtain from the state authorities a refund of the amount paid, nor to compel an adjustment in the collection of other taxes. 103 F. pages 527, 528.

But we have shown that there is an adequate remedy at law in this state for a refund (Ward v. First National Bank, supra), and there does not appear any distinct ground for equity to assume jurisdiction, when the substantial effect of our statute is considered.

Application for rehearing overruled.

All the Justices concur, except THOMAS, J., who dissents.

---

[1] Ante, p. 10.